UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ST. PAUL REINSURANCE COMPANY LIMITED LONDON,<br><br>    Plaintiff(s),<br><br>  v.<br><br>THE FORT MILLER GROUP, INC. and BEECHE SYSTEMS CORPORATION,<br><br>    Defendant(s). | No. C05-1912 BZ<br><br>**ORDER GRANTING DEFENDANTS' MOTION TO STAY** |

Before me is defendants' motion to stay this action until the underlying lawsuits filed in state court are resolved.[1]

Although neither side has briefed the issue, the question of whether to grant a stay is one of federal law. Wells Dairy, Inc. v. Travelers Indemnity Co. of Ill., 241

---

[1] There are currently six active lawsuits in state court. At the hearing on February 15, 2006, defendants requested a stay until the resolution of Robison Prezioso, Inc. v. Beeche, et al., CGC-03-42656 and California Engineering Contractors/Modern Continental Construction v. Beeche, et al., CGC-04-428416.

1

F.Supp.2d 945, 975 (N.D. Iowa, 2003)("The issue of the appropriateness of staying declaratory relief actions concerning insurance coverage pending resolution of the underlying state cases is a question that is controlled by federal civil procedure."). District courts have discretion to dismiss or stay an action for declaratory judgment, but the decision must rest on "considerations of practicality and wise judicial administration." Wilton v. Seven Falls Co., 515 U.S. 277, 288 (1995). In this case, as in Wells Dairy, the Court's discretion is informed by a well-developed body of state law on this issue.

In California, a party simultaneously defending a declaratory relief coverage action and one or more actions for which insurance coverage is sought may obtain a stay of the declaratory relief action upon a showing of prejudice. See Montrose Chemical Corp. of Cal. v. The Superior Court of Los Angeles County, 6 Cal.4th 287, 301 (Nov. 22, 1993)("Montrose I")("To eliminate the risk of inconsistent factual determinations that could prejudice the insured, a stay of the declaratory relief action pending resolution of the third party suit is appropriate when the coverage question turns on facts to be litigated in the underlying action."). See also Montrose Chemical Corp. of Cal. v. The Superior Court of Los Angeles County, 25 Cal.App.4th 902, 909 (Jun. 8, 1994)("Montrose II")(A stay may be appropriate because "the duty to defend . . . lasts until (a) the underlying lawsuit is resolved or (b) the coverage issue can be determined without prejudice to the insured."). Prejudice

2

1  may occur if the insured would be collaterally estopped in
2  the underlying actions from arguing facts decided in this
3  action or when the insured is compelled to defend against
4  plaintiffs in the underlying actions as well as its insurance
5  carrier in a coverage action.  Id. at 910.

6  Defendants contend that they face both types of
7  prejudice.  Defendants argue that they would be prejudiced by
8  being forced to fight a two-front war against plaintiffs in
9  the state actions at the same time as they are defending
10 themselves against St. Paul's claims.  Id.  St. Paul replies
11 that defendants are only paying for one defense; insurance
12 carriers are funding the defenses in the state actions.  The
13 fact remains that for companies of their size, defendants are
14 being required to commit their employees, time and energy
15 into defending this action when they could be used elsewhere
16 (Schumaker Decl. ¶¶ 11, 12).

17 This action will involve discovery on and determinations
18 regarding the manufacture, installation and use of
19 defendants' products.  Therefore, defendants argue, they
20 might be "collaterally estopped from relitigating any adverse
21 factual findings" in the underlying state court actions.
22 Montrose II, 25 Cal.App.4th at 909.  St. Paul's rescission
23 claim is based on allegations that defendants materially
24 misrepresented the value of their products (Compl. ¶¶ 39, 40)
25 and that defendants' insurance does not cover damages that
26 "do not arise out of or constitute an 'occurrence' and/or do
27 not arise out of or constitute 'property damage'" (Compl. ¶
28 42).  In particular, St. Paul alleges that defendants falsely

3

1  represented that the highest value of the products they
2  manufactured was $100,000, and the average value of their
3  products was less than $1000 (Compl. ¶ 29), whereas the
4  ultimate or true value of defendants' products is
5  substantially greater.  Defendants contend that contractors
6  who purchase defendant's modular units assemble them at the
7  job site, and the cost of each unit does not exceed $500
8  (Schumaker Decl. ¶¶ 17, 18).  St. Paul claims that the value
9  of defendants' products is actually the value of the platform
10 systems, which are composed of the modular units.  Plaintiffs
11 in the state actions allege breach of warranty and negligence
12 regarding defendants' products; one of defendants' defenses
13 is that plaintiffs in the state actions did not properly
14 assemble, install and/or use the platform systems.  If this
15 action proceeds, this Court might be asked to find that
16 defendants were manufacturing assembled platform systems with
17 values substantially greater than $100,000, and not modular
18 units to be assembled into platform systems.  Plaintiffs in
19 the state actions might be able to use such a finding to
20 argue that defendants were responsible for all aspects of the
21 access platforms, precluding defendants from arguing such
22 plaintiffs' improper assembly or installation.  Thus, issues
23 in this action and the state actions may overlap.  Adverse
24 factual determinations in this action could harm defendants
25 in the underlying state court actions, and issues that could
26 affect the question of coverage are more properly decided in
27 state court.  <u>Allstate Ins. Co. v. Harris</u>, 445 F.Supp. 847,
28 852 (N.D. Cal., 1978)(staying federal action to avoid "an

4

unwarranted interference with the state court proceeding and with state policies governing the administration of insurance disputes").

In response, St. Paul relies on the following language in Montrose II: In the event the insurer has more than one defense to coverage, "the trial court will need to consider each defense separately to decide whether it can be determined without prejudice to the insured . . . ." Montrose II, 15 Cal.App.4th at 908 (citing Justice Kennard's concurring opinion in Montrose I, 6 Cal.4th at 306). St. Paul argues that its rescission claim does not present the risks of prejudice that the coverage claims do. Thus, St. Paul argues, the Court "should not hesitate to fashion orders which attempt to balance [the] conflicting concerns" of potential prejudice to the insured against the burden on the insurance carrier, by severing the rescission claim from the coverages claim and trying it first. Id. at 910-11.

Severing St. Paul's rescission claim from its coverage claims presents practical complications. I am not persuaded that a clear line exists between St. Paul's rescission claim and the coverage claims since they all involve the nature of defendants' products. As I noted above, a core dispute in the rescission claim is how to define defendant's product which may overlap with some of the coverage issues. Ongoing and numerous discovery disputes could easily arise, as illustrated by the parties' current disagreements over discovery. For example, St. Paul's second set of requests for documents in this action includes requests such as "All

5

DOCUMENTS RELATING TO the MARKETING of YOUR products sold for use at the PROJECT", "All DOCUMENTS RELATING TO the design of products YOU sold for use on the PROJECT", "All DOCUMENTS RELATING TO the manufacture of products YOU sold for use on the PROJECT" and "All DOCUMENTS that RELATE TO the discussions and/or negotiations YOU conducted with Robison-Prezioso, Inc. regarding the products YOU sold for use on the PROJECT" (Schumaker Decl., Exh. H).  St. Paul propounded these requests even though it had offered to try to limit its requests to address only the rescission issues (Keller Decl., Exh. B at 2).  How defendants design their products or instruct purchasers on assembly or installation might show how defendants view their products, relevant for St. Paul's rescission claim, but these discovery requests also could have implications for St. Paul's coverage claims regarding the definitions of "property damage" or "occurrence."[2] Because the coverage issues are not easily separable from the rescission issues, discovery disputes and requests for court intervention are to be expected.  Severing the claims or imposing a protective order in this action could result in extensive case management at best and duplicative discovery and litigation at worst.

   Nor has St. Paul shown any compelling reason for the

---

[2]  St. Paul counters that defendants have already produced in this action many of the same documents produced in discovery in the underlying state court actions.  That St. Paul's discovery requests produced the same documents as those produced in the underlying state court actions suggests that the rescission and coverage issues and the issues in the state actions are not easily separable.

1 Court to embark on this ambitious undertaking.  St. Paul is a
2 "gap" insurer, which provides additional insurance to fill in
3 any gaps in defendants' general liability insurance.
4 Defendants have primary commercial general liability
5 insurance, secondary insurance and excess insurance, all with
6 substantial limits, and those insurers are actively defending
7 the state actions subject to a reservation of rights
8 (Schumaker Decl. ¶¶ 2-6).  St. Paul has not introduced any
9 evidence that it would be harmed if this action were stayed.
10 Defendants submitted a declaration that St. Paul has thus far
11 expended roughly $200,000 in defense costs (Gohn Decl. ¶ 4,
12 Exh. A), amounting to about $11,000 per month.  Even if these
13 costs were to rise, St. Paul has expressly reserved its
14 rights to seek recovery of any payments made (Schumaker
15 Decl., Exh. F), and St. Paul has given the Court no reason to
16 believe that St. Paul would not be reimbursed should it
17 prevail on its rescission or declaratory relief claims.

18     Weighing the interests on both sides, I conclude that
19 the minimal harm St. Paul faces if this case is stayed is
20 outweighed by the more substantial harms defendants face if
21 the case proceeds.  Considerations of practicality and wise
22 judicial administration also dictate this case be stayed.
23 Therefore, **IT IS ORDERED** that defendants' motion is **GRANTED**.
24 **IT IS FURTHER ORDERED** that all pending dates are **VACATED** and
25 that a status conference is scheduled for **September 25, 2006**
26 **at 4:00 p.m**.  One week prior to the conference, the parties
27 ///
28 ///

1 | shall submit a joint statement explaining the status of the
2 | state actions.
3 | Dated:   February 15, 2006

*Bernard Zimmerman*

Bernard Zimmerman
United State Magistrate Judge