Michelle R. Press (SBN163637),
Maria T. Wusinich (SBN239503),
SELMAN BREITMAN LLP
11766 Wilshire Boulevard, Sixth Floor
Los Angeles, CA 90025
Telephone: (310) 445-0800
Facsimile: (310) 473-2525
mpress@selmanbreitman.com
mwusinich@selmanbreitman.com

Attorneys for Plaintiff
St. Paul Reinsurance Company Limited
(erroneously referred to in the original
complaint as St. Paul Reinsurance Company
Limited London)

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| St. Paul Reinsurance Company Limited London,<br><br>                    Plaintiff,<br><br>          v.<br><br>The Fort Miller Group, Inc., The Fort Miller Company, Inc. and Beeche Systems Corporation,<br><br>                    Defendants. | CASE NO.    C 05 01912 BZ<br><br><br>STIPULATION AND [PROPOSED] ORDER FOR SUBSTITUTION OF PARTY |

        Plaintiff St. Paul Reinsurance Company Limited ("St. Paul Re") and defendants The Fort

Miller Group, Inc., The Fort Miller Company, Inc. and Beeche Systems Corporation (collectively

"defendants"), through their attorneys of record, hereby jointly stipulate as follows:

        1.        Whereas pursuant to Rule 25 of the Federal Rules of Civil Procedure, a transferee

of an interest in an action may be substituted into the action in place of an original party.

        2.        Pursuant to Part VII of the Financial Services and Markets Act of 2000 under the

laws of the United Kingdom ("Part VII Transfer"), all rights and liabilities of St. Paul Re have

been transferred to Unionamerica Insurance Company Limited ("Unionamerica").  Unionamerica

Selman Breitman LLP
ATTORNEYS AT LAW

390460.1  1090.23834

1   is the successor-in-interest to St. Paul Re.  A copy of the United Kingdom Companies Court Order

2   ("Order") approving the transfer is attached hereto as Exhibit 1.

3       3.      By reason of the Part VII Transfer, St. Paul Re is no longer the appropriate party to

4   this action.

5       4.      Unionamerica is substituted as a party to this action in place of St. Paul Re.

6       5.      Defendants' agreement to the substitution is conditioned upon their understanding

7   that the Part VII transfer involves a transfer to Unionamerica of St. Paul Re's assets and liabilities,

8   including any counterclaims defendants have in this matter.  Defendants reserve the right to

9   contest the substitution of Unionamerica should defendants' understanding of the effect of the

10  Order later prove incorrect.

11      6.      Unionamerica will not contest any of defendants' counterclaims on the ground that

12  Unionamerica did not succeed to the liabilities of St. Paul Re, nor will it assert any defenses it

13  would not have been able to assert absent the substitution.

14      7.      The substitution of Unionamerica will not affect any party's right or ability to refer

15  to St. Paul Re as appropriate during the course of this action, including at trial.

16

17  DATED: April 23, 2008              SELMAN BREITMAN LLP

18

19                                By: _Maria T. Wusinich_
20                                    MICHELLE R. PRESS, ESQ.
                                      MARIA T. WUSINICH, ESQ.
21                                    Attorneys for Plaintiff St. Paul Reinsurance Company
                                      Limited (erroneously referred to in the original
22                                    complaint as St. Paul Reinsurance Company Limited
                                      London)

23

24

25

26

27

28

2

**STIPULATION AND [PROPOSED] ORDER FOR SUBSTITUTION OF PARTY
CASE NO. C 05 10912 BZ**

Selman Breitman LLP
ATTORNEYS AT LAW

390460.1  1090.23834

1   DATED: April 22, 2008

2

3                                        SQUIRE SANDERS & DEMPSEY LLP

                                         By: _____
4                                            ETHAN A. MILLER, ESQ.
                                             DANIEL T. BALMAT, ESQ.
5                                        Attorneys for Defendants The Fort Miller Group, Inc.,
                                         The Fort Miller Company, Inc. and Beeche Systems
6                                        Corporation

7                                        **ORDER**

8       IT IS HEREBY ORDERED that Unionamerica Insurance Company Limited is substituted

9   as a party to this action in place of St. Paul Reinsurance Company Limited.
    **The schedule remains in place.**
10

11  DATED: April 24, 2008

12

13                                       By: _____
                                             HON. JUDGE BERNARD ZIMMERMAN
14                                           UNITED STATES MAGISTRATE JUDGE

15
                    
16

                    IT IS SO ORDERED
17
                    Judge Bernard Zimmerman
18

19

20

21

22

23

24

25

26

27

28

Selman Breitman LLP
ATTORNEYS AT LAW

390460.1  1090.23834

**STIPULATION AND [PROPOSED] ORDER FOR SUBSTITUTION OF PARTY
CASE NO. C 05 10912 BZ**

# EXHIBIT
# 1

<u>No. 7517 of 2007</u>

**IN THE HIGH COURT OF JUSTICE**

**CHANCERY DIVISION**

**COMPANIES COURT**



Mr Justice Evans-Lombe

IN THE MATTER OF ST. PAUL REINSURANCE COMPANY LIMITED

and

IN THE MATTER OF ST. PAUL TRAVELERS INSURANCE COMPANY LIMITED

and

IN THE MATTER OF UNIONAMERICA INSURANCE COMPANY LIMITED

and

IN THE MATTER OF THE FINANCIAL SERVICES AND MARKETS ACT 2000

———————————————

**ORDER**

———————————————

**UPON** the Application by Claim Form dated 11 October 2007 of the above-named companies whose registered office is situate at 60 Gracechurch Street, London EC3V 0HR (the "Applicants") for the sanctioning of an insurance business transfer pursuant to Part VII of the Financial Services and Markets Act 2000.

**AND UPON HEARING COUNSEL** for the Applicants

**AND UPON HEARING COUNSEL** for the Financial Services Authority

**AND UPON READING** the Claim Form and the evidence

**THE COURT HEREBY SANCTIONS** the Transfer Document set forth in the Schedule hereto

**AND IT IS ORDERED THAT** pursuant to section 112 of the Financial Services and Markets Act 2000, using the definitions in the Transfer Document and by virtue of this Order and without any further act or instrument, on and with effect from the Effective Date

(1) the Transferring Business, Transferring Assets, Transferring Policies and Transferring Liabilities be transferred to and vested in Unionamerica Insurance Company Limited

(2) the transfers effected by this Order shall have effect notwithstanding any provision to the contrary in any agreement or arrangement with any person and whether or not St. Paul Reinsurance Company Limited and St. Paul Travelers Insurance Company Limited would, apart from terms of this Order, have capacity to effect the same

(3) without prejudice to the generality of the other provisions of this Order, in any document evidencing or constituting a Transferring Policy references to St. Paul Reinsurance Company Limited or St. Paul Travelers Insurance Company Limited and/or to rights, powers, duties and/or obligations imposed upon St. Paul Reinsurance Company Limited or St. Paul Travelers Insurance Company Limited, their respective boards of directors or other officers, employees or agents shall, to the extent necessary to give effect to the Part VII Transfer, be read and construed and treated as references to Unionamerica Insurance Company Limited and/or to rights, powers, duties and/or obligations imposed upon Unionamerica Insurance Company Limited, its board of directors or other officers, employers or agents of Unionamerica Insurance Company Limited subject to and in accordance with the terms of the Transfer Document

(4) any proceedings pending by or against St. Paul Reinsurance Company Limited or St. Paul Travelers Insurance Company Limited in relation to any of the Transferring Assets or Transferring Liabilities at the Completion Date shall be continued thereafter by or against Unionamerica Insurance Company Limited and  Unionamerica Insurance Company Limited shall be entitled to any and all defences, claims, counterclaims and rights of set-off under or in relation to the Transferring Policies

**AND IT IS ORDERED** that the Effective Date shall be 31 December 2007 or such later date as the Applicants may agree, not being later than 31 May 2008

**AND IT IS ORDERED** that Unionamerica Insurance Company Limited shall deposit two office copies of this Order with the Financial Services Authority within ten days of the date of this Order

**AND IT IS ORDERED** that notice of the making of this order be published by Unionamerica Insurance Company Limited in every EEA State which is the state of the commitment as regards any policy included in the transfer or the EEA State in which the risk is situated stating the period within which a policyholder has the right to exercise any right to cancel the policy in accordance with the laws of that EEA State

CFD-#5725337-v1

St. Paul Reinsurance Company Limited and St. Paul Travelers Insurance Company Limited shall have liberty to apply

**Dated this 13th day of December 2007**

No.7517 of 2007

IN THE HIGH COURT OF JUSTICE

CHANCERY DIVISION

COMPANIES COURT

[Insert name of judge]

Thursday, the 13th day of December 2007

IN THE MATTER OF ST. PAUL REINSURANCE
COMPANY LIMITED

and

IN THE MATTER OF ST. PAUL TRAVELERS
INSURANCE COMPANY LIMITED

and

IN THE MATTER OF UNIONAMERICA INSURANCE
COMPANY LIMITED

and

IN THE MATTER OF THE FINANCIAL SERVICES
AND MARKETS ACT 2000

(1) St. Paul Reinsurance Company Limited

(2) St. Paul Travelers Insurance Company Limited

(3) Unionamerica Insurance Company Limited

Applicants

---

**ORDER**

---

NORTON ROSE LLP

Tel:  020 7283 6000
Fax: 020 7283 6500

Ref: RAXH/LN05792

Solicitors for the Applicants

No. 7517 of 2007

IN THE HIGH COURT OF JUSTICE

CHANCERY DIVISION

COMPANIES COURT

**IN THE MATTER OF
ST. PAUL REINSURANCE COMPANY LIMITED**

**and**

**IN THE MATTER OF
ST. PAUL TRAVELERS INSURANCE COMPANY LIMITED**

**and**

**IN THE MATTER OF
UNIONAMERICA INSURANCE COMPANY LIMITED**

**and**

**IN THE MATTER OF
THE FINANCIAL SERVICES AND MARKETS ACT 2000**

---

**TRANSFER DOCUMENT**

---

NORTON ROSE

# Contents

| Clause | | Page |
|---|---|---|
| 1 | Introduction | 1 |
| 2 | Interpretation | 1 |
| 3 | Transfer of the Transferring Business | 10 |
| 4 | Transferring Assets | 10 |
| 5 | Transferring Policies and other contracts | 10 |
| 6 | Transferring Liabilities | 13 |
| 7 | Deferred Transferring Policies | 14 |
| 8 | Declaration of Trust by SPRe and STIC | 15 |
| 9 | Indemnities in favour of SPRe and STIC | 16 |
| 10 | Outwards Reinsurance Agreements | 16 |
| 11 | Continuity Of Proceedings | 17 |
| 12 | Effective Date | 18 |
| 13 | Costs and Expenses | 19 |
| 14 | Modifications, Amendments or Additions | 19 |
| 15 | Gross-up | 19 |
| 16 | Contracts (Rights of Third Parties) Act 1999 | 20 |
| 17 | Successors and Assigns | 20 |
| 18 | Governing Law | 20 |

# 1    Introduction

1.1    The definitions set out in paragraph 2 below are used in this paragraph 1.

1.2    Mercury Reinsurance Company (U.K.) Limited was incorporated in England and Wales on 9 November 1979 and changed its name to St. Paul Fire & Marine Insurance Company (U.K.) Ltd on 15 March 1985.   It changed to its current name, St. Paul Reinsurance Company Limited ("**SPRe**") on 1 October 1992.  The registered number of SPRe is 01460363 and its registered office is situated at 60 Gracechurch Street, London, EC3V 0HR.

1.3    SPRe is a "UK authorised person" as defined in Section 178(4) of FSMA, with permissions, *inter alia*, carry out contracts of general insurance in the UK under classes of business 1 to 18.

1.4    St. Katherine Insurance Company Limited was incorporated in England and Wales on 10 December 1971.   On 27 November 1981 it was re-registered as a public company and changed its name to St. Katherine Insurance Company Public Limited Company and on 12 May 1988 it was re-registered as a private company and changed its name back to St. Katherine Insurance Company Limited.   It changed its name again to St. Paul International Insurance Company Limited on 1 October 1992.  Finally, it changed to its current name, St. Paul Travelers Insurance Company Limited ("**STIC**"), on 29 October 2004.  The registered number of STIC is 01034343 and its registered office is situated at 60 Gracechurch Street, London EC3V 0HR.

1.5    STIC is a "UK authorised person" as defined in Section 178(4) of FSMA, with permissions, *inter alia*, to effect and carry out contracts of general insurance in the UK under classes of business 1 to 17.

1.6    Unionamerica Insurance Company Limited ("**UIC**") was incorporated in England and Wales on 1 September 1971.  Its registered number is 01022903 and its registered office is situated at 60 Gracechurch Street, London EC3V 0HR.

1.7    UIC is a "UK authorised person" as defined in Section 178(4) of FSMA, with permission, *inter alia*, to carry out contracts of general insurance in the UK under classes of business 1 to 18.

1.8    SPRe, STIC and UIC have agreed that the Transferring Business will transfer to UIC in accordance with this Transfer and by virtue of the Order.

# 2    Interpretation

2.1    In this Transfer, unless the subject or context otherwise requires:

"**Additional Assets**" means Assets of SPRe with an aggregate value of US$5 million or such greater sum as SPRe and UIC may agree;

"**Asset(s)**" means any assets and property of every kind and description, wherever located, whether real, personal or mixed, tangible or intangible, whether owned, leased or licensed including without limitation all rights, benefits and powers under any contract and all rights, claims and powers against any third party;

"**Claims Handling Agreement**" means the agreement to be entered into between SPRe, STIC and UIC pursuant to paragraph 7 in the agreed form;

"**Commuted Business**" means (a) any Policy comprised in the Transferring Business; and (b) any Outwards Reinsurance Agreement, in either case which has been commuted by agreement with the relevant counterparty but pursuant to which contract, as amended by such commutation, any party thereto has (x) any obligation or Liability whether or not contingent which as at the Effective Date remains unperformed or unpaid or (y) any rights that remain exercisable as at the Effective Date;

"**Court**" means the High Court of Justice in England and Wales;

"**Deferred Transferring Policies Reinsurance Contract**" means the contract to be entered into between SPRe, STIC and UIC in relation to certain Liabilities pursuant to paragraph 7 in the agreed form;

"**EEA**" means the European Economic Area and "**EEA State**" means a state which is a contracting party to the agreement on the EEA signed at Oporto on 2 May 1992;

"**Effective Date**" means the time and date when this Transfer shall become operative in accordance with paragraph 13;

"**Encumbrance**" means any charge, pledge, security assignment, lien, option, restriction, right of first refusal, right of pre-emption, third party right or interest, any other encumbrance or security interest of any kind and any other type of preferential arrangement (including, without limitation, title transfer and retention agreements) having a similar effect;

"**Excluded Assets**" means:

(a)     the Excluded Intellectual Property;

(b)     the Excluded Technology;

(c)     the corporate minute books and stock records of SPRe and STIC; and any other books and records to the extent relating to any other Excluded Asset;

(d)    all Assets not used (in whole or in part) in the conduct of the operation of the Transferring Business;

(e)    the Retained Records;

(f)    all cash and other investments other than (i) those held as reserves for the SPRe Business or the STIC Business (as the case may be) and (ii) the Additional Assets; and

(g)    all rights, benefits and powers under the Parental Guarantees, the Claims Handling Agreement, the Deferred Transferring Policies Reinsurance Contract and the Reorganisation Agreements;

**"Excluded Intellectual Property"** means the Intellectual Property that is owned by STIC and which, on the Effective Date, has no substantial application to the Transferring Business;

**"Excluded Liabilities"** means:

(a)    in the case of SPRe, its non-insurance Liabilities (amounting to approximately US$1,000,000);

(b)    in the case of STIC, its Liabilities to the extent relating to or arising under the STIC Non London Market Business;

(c)    Liabilities to make a payment of or in respect of or of an amount representing, equal to, equivalent to, or deemed to be, Tax (whether actual, present, future, contingent or deferred); and

(d)    all obligations and Liabilities under the Claims Handling Agreement, the Deferred Transferring Policies Reinsurance Contract and the Reorganisation Agreements;

**"Excluded Technology"** means the Technology which is owned by STIC and which, on the Effective Date, has no substantial application to the Transferring Business;

**"F&M"** means St. Paul Fire and Marine Insurance Company;

**"FSA"** means the UK Financial Services Authority or any successor UK regulatory authority of insurance and/or reinsurance companies;

**"FSMA"** or **"the Act"** means the Financial Services and Markets Act 2000;

**"Governmental Authority"** means any national, supra-national, federal, state, provincial or local government, political subdivision, governmental, regulatory, department, bureau, board or other administrative authority, instrumentality, agency, body or commission, self-

regulatory organization or any court (including, without limitation, the Court), tribunal, or judicial or arbitral body;

**"Independent Expert"** means Michael Barkham of Ernst & Young LLP;

**"Intellectual Property"** means all of the following, whether protected, created or arising under the laws of any jurisdiction and whether or not registered or published: copyrights; moral rights; database rights; design rights; trade secrets; Trademarks; all rights arising from or in respect of domain names and domain name registrations and reservations; intellectual property rights arising from or in respect of Technology; and all other applications and registrations related to any of the rights set forth in this definition and all rights therein whether provided by international treaty, convention or otherwise;

**"Liability"** means any debt or liability (whether direct or indirect, absolute or contingent, accrued or unaccrued, liquidated or unliquidated, or due or to become due) including, without limitation, all costs and expenses relating thereto;

**"Order"** means an order made by the Court pursuant to Section 111(1) of FSMA sanctioning this Transfer and any order (including any subsequent order which is ancillary thereto) in relation to this Transfer made by the Court pursuant to Section 112 of FSMA;

**"Outwards Reinsurance Agreements"** means all agreements pursuant to which any portion of the Liabilities under the Transferring Policies is or has been reinsured or retroceded, and which are in force immediately prior to the Effective Date but not including, for the avoidance of doubt, the Parental Guarantees;

**"Parental Guarantees"** means together the obligations incurred by F&M pursuant to (i) a guarantee given by F&M in favour of SPRe pursuant to a Deed Poll dated 22 August 1995, a guarantee given by F&M to SPRe pursuant to an agreement dated 1 October 1993 (as amended on 26 September 1994) and a letter of guarantee dated 28 September 1993 from F&M to the Department of Trade & Industry in relation to the performance of all obligations arising out of all insurance and reinsurance contracts entered into by SPRe; and (ii) a guarantee given by F&M in favour of STIC pursuant to a Deed Poll dated 22 August 1995, a guarantee given by F&M to STIC pursuant to an agreement dated 15 December 1993 and a letter of guarantee dated 10 December 1993 from F&M to the Department of Trade & Industry in relation to the performance of all obligations arising out of all insurance and reinsurance contracts entered into by STIC;

**"Permits"** means any approvals, authorisations, consents, registrations, franchises, licences, permits or certificates of a Governmental Authority;

**"Person"** means any natural person, general or limited partnership, corporation, limited liability company, limited liability partnership, firm, joint venture, joint stock company, trust, unincorporated organization, association or organization or other legal entity;

**"Policies"** means all policies (as defined in the Financial Services and Markets Act 2000 (Meaning of "Policy" and "Policyholder") Order 2001 (S.I. 2001/2361)), treaties, facultative certificates, binders, slips and other contracts of or for insurance, reinsurance or retrocession and all binding quotations (and including at any time any constituent part of a Policy which gives rise to any separately identifiable benefit) written by or on behalf of SPRe and/or STIC as insurer, reinsurer or retrocessionaire (where such policy, treaty, facultative certificate, binder, slip or other contract was not written solely by or on behalf of SPRe and/or STIC, to the extent and only for and in respect of the proportion written by or on behalf of SPRe and/or STIC) (including, without limitation, all supplements, endorsements and riders thereto and all ancillary agreements in connection therewith) prior to the Effective Date;

**"Proceedings"** means any action or other legal or administrative proceedings or step (whether direct or indirect, by way of a claim, demand, legal proceedings, execution of judgement, arbitration, complaint or otherwise howsoever) including:

(a)     arbitration;

(b)     mediation;

(c)     any other dispute resolution procedure (whether or not it involves submission to any court);

(d)     any judicial, quasi-judicial, administrative or regulatory review or process; and

(e)     any complaint or claim to any ombudsman;

**"Regulated Activities Order"** means the Financial Services and Markets Act 2000 (Regulated Activities) Order 2001 (S.I. 2001/544), as amended;

**"Reorganisation Agreements"** means the agreements to be entered into relating to the transfer of the entire issued share capital of SPRe and the subsequent transfer of certain assets of SPRe to UIC;

**"Retained Records"** means any accounting and financial and other records of SPRe and STIC, which SPRe and/or STIC are required by law to retain, including VAT records;

**"Software"** means any and all:

(a)     computer programmes, including any and all software implementations of algorithms, models and methodologies, whether in source code, object code, human readable form or other form;

(b)     databases and compilations, including any and all data and collections of data, whether machine readable or otherwise;

(c)   descriptions, flow-charts and other work product used to design, plan, organize and develop any of the foregoing, screens, user interfaces, report formats, firmware, development tools, templates, menus, buttons and icons; and

(d)   all documentation including user manuals and other training documentation related to any of the foregoing;

"**SPRe Business**" means all Policies to the extent and only for and in respect of the Policies written by or on behalf of, or for which responsibility has been assumed by, SPRe as insurer/reinsurer or retrocessionaire prior to the Effective Date;

"**STIC Business**" means all Policies to the extent and only for and in respect of the Policies written by or on behalf of, or for which responsibility has been assumed by, STIC as insurer/reinsurer or retrocessionaire prior to the Effective Date, but excluding the STIC Non London Market Business;

"**STIC Non London Market Business**" means:

(a)   all Policies written by STIC on or after 1 January 1994;

(b)   all Policies written by STIC before 1 January 1994, details of which are contained on the computer databases owned or operated by or on behalf of STIC using I/90 software (including the databases known as SPI, SAU and SFC); and

(c)   (i) an aggregate stop loss reinsurance agreement between SPRe and STIC dated 21 September 1993 relating to SPRe's engineering account for all underwriting years up to and including 1992; and (ii) a reinsurance agreement between SPRe and STIC dated 27 March 1992 relating to business classified as Techsure, Promedica and Special business;

"**Tax**" means:

(a)   all forms of tax, levy, duty, charge, impost, withholding or other amount whenever created or imposed and whether of the United Kingdom or elsewhere payable to or imposed by any Tax authority;

(b)   all charges, interest, penalties and fines incidental or relating to any Tax falling within (i) above or which arise as a result of the failure to pay any Tax on the due date or to comply with any obligation relating to Tax;

"**Technology**" means collectively, all technology, designs, formulae, algorithms, procedures, methods, discoveries, processes, techniques, ideas, know-how, Software, research and development, technical data, tools, materials, specifications, processes, inventions (whether patentable or unpatentable and whether or not reduced to practice),

apparatus, creations, improvements, works of authorship in any media, confidential, proprietary or non-public information, and other similar materials, and all recordings, graphs, drawings, reports, analyses, and other writings, and other tangible embodiments of the foregoing, in any form whether or not specifically listed herein, and all related technology;

"**Third Party Contracts**" means all contracts to which SPRe and/or STIC is party or beneficiary which relate to the Transferring Business other than the Policies, the Outwards Reinsurance Agreements, the Parental Guarantees and the Excluded Assets;

"**Trademarks**" means all of the following, whether protected, created or arising under the laws of England and Wales, the United States or the laws of any other jurisdiction: trademarks, service marks, trade names, service names, trade dress, logos, designs, slogans and other identifiers of source, including all goodwill associated therewith and all common law rights, registrations and applications for registration thereof, and all rights therein provided by international treaties or conventions, and all extensions and renewals of any of the foregoing;

"**Transfer**" means this Transfer in its original form or with, or subject to, any modification or addition thereto;

"**Transferring Assets**" means all of the Assets comprised in or relating to the Transferring Business, including without limitation all right, title and interest of SPRe and STIC in, to or under:

    (a)   Assets held as of the Effective Date by SPRe in an amount equal to the technical reserves for the Transferring Policies as reflected in the books and records of SPRe;

    (b)   the Additional Assets;

    (c)   the benefit of the Outwards Reinsurance Agreements;

    (d)   Third Party Contracts;

    (e)   all accounts, notes, premiums, reinsurance, retrocession and subrogation recoveries and other receivables that primarily relate to the Transferring Business;

    (f)   all expenses that have been prepaid by SPRe and STIC relating to the Transferring Business, including, without limitation, *ad valorem* Taxes and lease and rental payments;

    (g)   all of SPRe's and/or STIC's causes of action against third parties relating to the Transferring Business whatsoever and howsoever arising including but not limited

to those causes of action relating to the Transferring Assets or the Transferring Liabilities or the Commuted Business;

(h)    all Intellectual Property other than the Excluded Intellectual Property and all Technology other than the Excluded Technology;

(i)    all transferable Permits used in connection with the Transferring Business;

(j)    all books, records, files and papers, whether in hard copy or computer format, of the Transferring Business, including, without limitation, insurance and reinsurance contracts, claims and underwriting files, sales and promotional literature, manuals and data, sales and purchase correspondence and lists of present and former customers, excluding the Retained Records; and

(k)    all goodwill (including, without limitation, the renewal rights) associated with the Transferring Assets,

but excluding the Excluded Assets;

**"Transferring Business"** means the SPRe Business and the STIC Business;

**"Transferring Liabilities"** means all Liabilities and commitments of every kind and description of SPRe and/or STIC to the extent arising from or relating to the Transferring Business, as such business shall exist on the Effective Date and irrespective of whether the Liabilities and commitments shall arise prior to or following the Effective Date, including, without limitation:

(a)    all Liabilities under the Transferring Policies;

(b)    any Liabilities under the Outwards Reinsurance Agreements to the extent such Liabilities relate to the Transferring Policies; and

(c)    all Liabilities under the Commuted Business,

but excluding the Excluded Liabilities;

**"Transferring Policies"** means the Policies comprised in or relating to the Transferring Business together or individually as the context may indicate;

**"Transferring Policyholder"** means an insured, insurer, reinsurer or syndicate at Lloyd's that has ceded a risk to or insured a risk with SPRe or STIC pursuant to a Transferring Policy;

**"UK"** means the United Kingdom of Great Britain and Northern Ireland; and

"**VAT**" means value added or similar turnover or sales taxes, wheresoever imposed (including any interest, surcharges or penalties in respect of the same).

2.2     In this Transfer:

2.2.1   "**property**" and "**asset**" includes (without limitation) property, assets, rights (including, without limitation, contingent rights as to the repayment of tax) and powers of every description (whether present or future, actual or contingent) and includes property and assets held on trust, securities (quoted or unquoted), benefits (including, without limitation, tax benefits), powers of any description and any interest whatsoever in any of the foregoing;

2.2.2   "**transfer**" includes (as the context may require) "**assign**", "**assignation**", "**assignment**", "**dispose**", "**disposal**", "**novate**", "**novation**", "**convey**" and "**conveyance**" and shall include a transfer by operation of law;

2.2.3   any reference to the singular shall include a reference to the plural and vice versa and any reference to the masculine shall include a reference to the feminine;

2.2.4   any reference to a court, tax, accounting or regulatory authority shall be deemed to include a reference to such authority's successors from time to time;

2.2.5   any reference to an enactment, a statutory provision or any subordinate legislation shall be deemed to include a reference to that enactment, statutory provision or subordinate legislation as amended, replaced or re-enacted from time to time and to any instrument or order made from time to time under such enactment, statutory provision or subordinate legislation;

2.2.6   expressions used which have meanings under FSMA shall bear those meanings unless stated otherwise;

2.2.7   any reference to this Transfer shall include the Schedules to it and (unless inconsistent with the subject or context) references in this Transfer to paragraphs, parts or Schedules are to paragraphs of, parts of or the Schedules to this Transfer;

2.2.8   any reference to writing shall include any mode of reproducing words in a legible and non-transitory form; and

2.2.9   if a period of time is specified from a given day or date or from the day or date of an act or event, it shall be calculated exclusive of that day or date.

3    **Transfer of the Transferring Business**

On and with effect from the Effective Date, the Transferring Business shall by the Order and without any further act or instrument be transferred to, and vested in, UIC in accordance with this Transfer.

4    **Transferring Assets**

4.1    Subject to paragraph 4.4 on and with effect from the Effective Date, the Transferring Assets, and all the estate and interest of SPRe and STIC in them shall, by the Order and without any further act or instrument, be transferred to, and be vested in, UIC subject to all Encumbrances and other concomitant obligations (if any) affecting such Transferring Assets (other than any Excluded Assets or Excluded Liabilities), in accordance with this Transfer.

4.2    UIC shall accept, without investigation or requisition, such title as SPRe and STIC shall have at the Effective Date to the Transferring Assets.

4.3    SPRe and STIC and UIC shall, as and when necessary or appropriate, execute and deliver all documents and perform all such other acts as may be reasonably required to effect or perfect the transfer to, and vesting in, UIC of any Transferring Asset in accordance with the terms of this Transfer including, for the purposes of clarity, obtaining any required consent or waiver.

4.4    If on the Effective Date:

4.4.1    (i) any Transferring Asset is subject to the law of any country or territory outside the UK; and (ii) such law provides that further steps, in addition to the Order, are required to be taken to effect pursuant to such law the transfer of such Transferring Asset (to the extent only of that part of the interests of SPRe or STIC (as appropriate) in any such Transferring Asset the transfer of which is subject to such steps being taken); or

4.4.2    SPRe or STIC (as appropriate) and UIC agree that the interest of SPRe or STIC (as appropriate) in any Transferring Asset or part thereof is more conveniently to be transferred pursuant to this Transfer after the Effective Date in conjunction with any Transferring Assets referred to in paragraph 4.4.1 or in conjunction with a Liability referred to in paragraph 6.2,

such Transferring Asset (or such part thereof) shall not transfer on the Effective Date but such Transferring Asset (or such part thereof), and all the estate and interest of SPRe or STIC (as appropriate) in it together with any proceeds of sale or income or other accrual or return whatsoever, whether or not in any case in the form of cash, from time to time earned on or received after the Effective Date in respect of any such Transferring Asset

(or such part thereof) shall, by the Order and without any further act or instrument, be transferred to, and be vested in, UIC subject to all Encumbrances and other concomitant obligations (if any) (other than any Excluded Assets or Excluded Liabilities) affecting such Transferring Asset (or such part thereof), in accordance with this Transfer:

(a)  in the case of a Transferring Asset referred to in paragraph 4.4.1 immediately upon such steps as are referred to in that paragraph being taken; or

(b)  in the case of a Transferring Asset referred to in paragraph 4.4.2, upon the agreement of SPRe or STIC (as the case may be) and UIC,

and in respect of such Transferring Asset (or such part thereof), all references in the Order and this Transfer to the Effective Date shall be construed as references to such later date on which such steps are taken or agreement is reached (as appropriate).

## 5      Transferring Policies and other contracts

5.1     In addition to the provisions of paragraph 4 and save as provided in this Transfer, on and with effect from the Effective Date, UIC shall, by the Order and without any further act or instrument, be entitled to all the rights, benefits and powers under the Transferring Policies and be subject to all the obligations and Transferring Liabilities of SPRe or STIC under the Transferring Policies whatsoever subsisting on the Effective Date.

5.2     Save as provided in this Transfer, every Transferring Policy shall be construed and have effect on and from the Effective Date as if UIC had always been an original party thereto from inception instead of SPRe or STIC as the case may be (such that the Policy shall continue in force as between UIC and the relevant policyholder or other party thereto on the terms which applied to that Policy prior to the Effective Date, but without prejudice to any right which UIC may have subsequently to vary, terminate or avoid such Policy, whether under the terms thereof or at law).

5.3     Save as provided in this Transfer, the transfer and vesting of any Asset or Liability relating to any part of the Transferring Business by virtue of the Order and this Transfer shall not:

5.3.1          invalidate or discharge any contract, security interest or any other agreement or arrangement having a similar effect; or

5.3.2          require further registration in respect of any security; or

5.3.3          constitute a breach of, or default under, or require any obligation to be performed sooner or later than would have otherwise been the case under, any contract or instrument to which UIC, SPRe or STIC are a party or are bound; or

5.3.4     allow any party to a contract to which UIC, SPRe or STIC are a party to terminate that contract when he would not otherwise have been able to terminate it; or

5.3.5     entitle any party to any contract to which UIC, SPRe or STIC are a party to vary the terms of that contract when he would not otherwise have been able to vary those terms or confer a right or benefit on him which he would not otherwise have had; or

5.3.6     confer any greater or lesser rights or benefits, or impose any greater or lesser obligations, on any party to any contract to which STIC, SPRe or UIC are a party when that greater or lesser obligation would not otherwise have been imposed.

5.4     Every Transferring Policyholder shall, on and from the Effective Date and to the exclusion of any rights he may have against SPRe and/or STIC (as appropriate) under any Transferring Policy, be entitled to the same rights against UIC as were available to him against SPRe and/or STIC (as appropriate) under such Transferring Policies.

5.5     All premiums and other amounts attributable or referable to the Transferring Policies shall on and after the Effective Date be payable to UIC and shall be receivable and received by UIC.

5.6     UIC shall be entitled to any and all defences, claims, counterclaims and rights of set-off under the Transferring Policies which would have been available to SPRe and/or STIC (as appropriate) including, without limitation, as a result of the commutation of any Transferring Policy.

5.7     Every Transferring Policyholder shall, from and after the Effective Date, in substitution for any Liability or obligation owed by him thereunder to SPRe and/or STIC (as appropriate), be under the same Liability or obligation to UIC.

5.8     All references in any Transferring Policy (to the extent they relate to SPRe or STIC's participation on that Transferring Policy) to SPRe or STIC, the SPRe or STIC board of directors, or any other officers, employees or agents of SPRe or STIC shall from and after the Effective Date be read as references to UIC, the board of directors of UIC, or any other officers, employees or agents of UIC or, where appropriate, agents of UIC to which the administration or investment management of the business carried on by UIC has been delegated.  In particular, but without limitation, all rights and/or duties exercisable or expressed to be exercisable or responsibilities to be performed by SPRe or STIC, the SPRe or STIC board of directors, or any other officers, employees or agents of SPRe or STIC in relation to any of the Transferring Policies shall, from and after the Effective Date be exercisable or required to be performed by UIC, the board of directors of UIC or any other officers, employees or agents of UIC.

5.9     Nothing in the Order or this Transfer shall:

5.9.1      transfer the Parental Guarantees or any rights, benefits, powers or obligations conferred thereby; or

5.9.2      amend in any way the Parental Guarantees; or

5.9.3      result in F&M guaranteeing any obligations of UIC (including any obligations incurred originally by SPRe or STIC that UIC assumes pursuant to this Transfer),

such that on and from the Effective Date, the Parental Guarantees shall not be enforceable in respect of the Transferring Policies.

5.10      The provisions of paragraph 5.1 to 5.8 shall apply, *mutatis mutandis*, to all Third Party Contracts.

5.11      With effect from the Effective Date, UIC shall:

5.11.1      succeed to all rights, Liabilities and obligations of SPRe and/or STIC (as appropriate) in respect of data which relates to the Transferring Business and which is subject to the Data Protection Act 1998;

5.11.2      become the data controller of any data which relates to the Transferring Business and which is subject to the Data Protection Act 1998 in place of SPRe and/or STIC (as the case may be) and shall be deemed to have been the controller of all such data at all material times when data was processed; and

5.11.3      in respect of data which relates to the Transferring Business be under the same duty by virtue of any law as SPRe and/or STIC (as appropriate) was under to respect the confidentiality and privacy of any person in relation to that data and shall be bound by any specific notice given or request made by the data subject which was binding on SPRe and/or STIC (as appropriate) and which required SPRe and/or STIC (as appropriate) not to use data for marketing purposes.

5.12      In any consent given by a data subject in respect of such data as is mentioned in paragraph 5.11, any reference to SPRe or STIC (as relevant) (or to any member of their group) shall be deemed to include a reference to UIC (and to any member of UIC's group) provided however that where any data subjects referred to in paragraph 5.11 continue also to be data subjects of SPRe and/or STIC (as the case may be) after the Effective Date then any consent given by a data subject shall also continue to apply to SPRe and/or STIC (as appropriate) (or to any member of their group).

## 6     Transferring Liabilities

6.1      Subject to paragraph 6.2, on and with effect from the Effective Date, the Transferring Liabilities and all the estate and interest of SPRe and/or STIC in them shall, by the Order

without any further act or instrument, be transferred to, and become Liabilities of, UIC and shall cease to be Liabilities of SPRe and/or STIC, in accordance with this Transfer.

6.2     If on the Effective Date:

6.2.1     (i) any Transferring Liability is subject to the law of any country or territory outside the UK; and (ii) such law provides that further steps, in addition to the Order, are required to be taken to effect pursuant to such law the transfer of such Transferring Liability to UIC (to the extent only of that part of the Transferring Liability the transfer of which is subject to such steps being taken); or

6.2.2     SPRe or STIC (as appropriate) and UIC agree that any Transferring Liability or part thereof is more conveniently to be transferred pursuant to this Transfer after the Effective Date in conjunction with any Transferring Liabilities referred to in paragraph 6.2.1 or in conjunction with an Asset referred to in paragraph 4.4,

such Transferring Liability (or such part thereof) shall not transfer on the Effective Date but such Transferring Liability (or such part thereof) shall, by the Order without any further act or instrument, be transferred to, and become Liabilities of, UIC and shall cease to be Liabilities of SPRe and/or STIC in accordance with this Transfer:

(a)     in the case of a Transferring Liability referred to in paragraph 6.2.1 immediately upon such steps as are referred to in that paragraph being taken; or

(b)     in the case of a Transferring Liability referred to in paragraph 6.2.2, upon the agreement of SPRe or STIC (as the case may be) and UIC,

and in respect of such Transferring Liability (or part thereof), all references in the Order and this Transfer to the Effective Date shall be construed as references to such later date on which such steps are taken or agreement is reached (as appropriate).

## 7     Deferred Transferring Policies

7.1     Liabilities arising out of the Transferring Policies which are not transferred on the date on which this Transfer becomes operative pursuant to paragraph 13 (the "**Operative Date**") shall, pending their transfer to UIC (whether pursuant to this Transfer or otherwise), remain Liabilities of SPRe or STIC as appropriate but all such Liabilities of SPRe or STIC as appropriate and all other amounts paid or payable by SPRe or STIC as appropriate in respect of such Policies (the "**Deferred Transferring Policies**") shall on or prior to the Operative Date be reinsured in their entirety by UIC under the Deferred Transferring Policies Reinsurance Contract.

7.2     The premiums payable by SPRe and STIC in respect of such reinsurance shall be an amount relating to such Deferred Transferring Policies as at the Operative Date, which

shall be deemed to have been satisfied by the transfer to UIC of the Transferring Assets, plus all subsequent premium or other payments received by SPRe and STIC in respect of such Deferred Transferring Policies.

7.3     SPRe, STIC and UIC shall enter into the Claims Handling Agreement on or before the Operative Date pursuant to which SPRe and STIC shall appoint UIC to administer, adjudicate and settle all claims relating to any Deferred Transferring Policy subject to claims handling guidelines to be agreed between the parties.

7.4     SPRe and/or STIC (as appropriate) and UIC shall, as and when necessary or appropriate, execute and deliver all documents and perform all such other acts as may be reasonably required to effect or perfect the transfer to, and vesting in, UIC of any Deferred Transferring Policy in accordance with the terms of this Transfer, including, for the purposes of clarity, obtaining any required consent or waiver.

7.5     On and from each date determined in accordance with paragraphs 4.4 and/or 6.2, each Deferred Transferring Policy to which such paragraph applies, and all the Transferring Assets and Transferring Liabilities relating to such Deferred Transferring Policy, shall, to the extent not previously transferred, by the Order and without any further act or instrument be transferred to, and be vested in, UIC.

## 8     Declaration of Trust by SPRE and STIC

8.1     SPRe and/or STIC (as appropriate) shall hold the Assets referred to in paragraph 4.4 as trustee and in trust for UIC absolutely for so long as is legally permissible (but save to the extent that giving effect to such a trust would have the effect of transferring any interest falling within sub-paragraph 4.4.1).

8.2     SPRe and/or STIC (as appropriate) shall be subject to UIC's direction in respect of any such Asset until such Asset is transferred to or otherwise vested in UIC or is disposed of (whereupon SPRe and/or STIC (as appropriate) shall account to UIC for the proceeds of sale thereof).   UIC shall have authority (with authority to sub-delegate) to act as the attorney of SPRe and/or STIC (as appropriate) in respect of any such Asset for all such purposes.

8.3     In the event of any payment (including any reinsurance receipts) being made to, property being received by, or a right being conferred upon SPRe and/or STIC (as appropriate) in relation to any Transferring Asset, SPRe and/or STIC (as appropriate) shall as soon as is reasonably practicable notify UIC and pay over the full amount of such payment or (to the extent to which it is able to do so) transfer such property or right to UIC or otherwise in accordance with the reasonable directions of UIC and UIC shall on demand indemnify SPRe and/or STIC (as appropriate) against any reasonable costs properly incurred by it to complete such transaction.

## 9      Indemnities in favour of SPRe and STIC

9.1     UIC shall discharge on behalf of SPRe and/or STIC (as appropriate) or, failing that, indemnify SPRe and/or STIC (as appropriate) from and after the Effective Date against:

9.1.1     all Transferring Liabilities (to the extent not reinsured to UIC under the Deferred Transferring Policies Reinsurance Contract) whether the same shall arise prior to or following the Effective Date but, where such Transferring Liabilities are the subject of a policy of indemnity insurance or a claim or right of recovery against a third party which constitutes an Asset that has not transferred to UIC as a result of paragraph 4.4, UIC shall not discharge on behalf of or indemnify SPRe and/or STIC (as appropriate) to the extent that SPRe and/or STIC (as appropriate) has successfully claimed under such a policy or against such third party.  UIC shall indemnify, and keep indemnified, SPRe and/or STIC (as appropriate) against any cost or Liability it may incur in taking such action; and

9.1.2     save as otherwise provided in this Transfer or the agreements referred to herein, any other cost, claim, loss, damages, Liability or expense (whatsoever) incurred in connection with the Transferring Business (other than regulatory capital costs) including, without limitation, the conduct of the trust arrangements, and the conduct of claims under paragraph 11, whether the same shall arise prior to or following the Effective Date.

## 10     Outwards Reinsurance Agreements

10.1    On and with effect from the Effective Date, all the rights, benefits and powers conferred on or vested in SPRe and/or STIC and all the Liabilities imposed on SPRe and/or STIC, by or under the Outwards Reinsurance Agreements whether express or implied shall, by the Order and without any further act or instrument, be transferred to and vest in UIC who shall, where appropriate, be substituted as a party in place of SPRe and/or STIC or added as a party as if UIC had always been an original party to each such agreement from inception provided always that:

10.1.1    any commutations entered into by SPRe (whether globally or on any other basis) with any of its reinsurers or retrocessionaires before the Effective Date shall not in any way affect any reinsurance, retrocession or similar protection entered into by UIC before the Effective Date or transferred from STIC to UIC pursuant to this Transfer;

10.1.2    any commutations entered into by STIC (whether globally or on any other basis) with any of its reinsurers or retrocessionaires before the Effective Date shall not in any way affect any reinsurance, retrocession or similar protection entered into by UIC

before the Effective Date or transferred from SPRe to UIC pursuant to this Transfer; and

10.1.3  any commutations entered into by UIC (whether globally or on any other basis) with any of its reinsurers or retrocessionaires before the Effective Date shall not in any way affect any reinsurance, retrocession or similar protection transferred from STIC or SPRe to UIC pursuant to this Transfer.

10.2  The reinsurers and retrocessionaires under any Outwards Reinsurance Agreement can have no greater or lesser Liability to UIC than they would have had to SPRe and/or STIC in the absence of this Transfer.

10.3  To the extent that the risk under any Deferred Transferring Policy has been ceded to a third party under an Outwards Reinsurance Agreement, any payment in respect of such risk made to the Policyholder by UIC on behalf of SPRe and/or STIC under the relevant Deferred Transferring Policy or to SPRe and/or STIC under the Deferred Transferring Policies Reinsurance Contract shall be deemed to be a payment by UIC for the purposes of such Outwards Reinsurance Agreement, and shall give rise to a claim by UIC thereunder as if it were the reinsured under the relevant Outwards Reinsurance Agreement.

10.4  All references in any Outwards Reinsurance Agreement (to the extent they relate to SPRe or STIC's participation on that Outwards Reinsurance Agreement) to SPRe or STIC, the SPRe or STIC board of directors, or any other officers, employees or agents of SPRe or STIC shall from and after the Effective Date be read as references to UIC, the board of directors of UIC, or any other officers, employees or agents of UIC or, where appropriate, agents of UIC to which the administration or investment management of the business carried on by UIC has been delegated. In particular, but without limitation, all rights and/or duties exercisable or expressed to be exercisable or responsibilities to be performed by SPRe or STIC, the board of directors of SPRe or STIC, or any other officers, employees or agents of SPRe or STIC in relation to any of the Outwards Reinsurance Agreements shall, from and after the Effective Date be exercisable or required to be performed by UIC, the board of directors of UIC or any other officers, employees or agents of UIC.

## 11  Continuity Of Proceedings

11.1  On and with effect from the Effective Date, any Proceedings which have been commenced by or against SPRe and/or STIC in connection with the Transferring Business, the Transferring Policies, the Transferring Assets or the Transferring Liabilities shall be continued by or against UIC (in place of SPRe and/or STIC) who shall be entitled to all defences, claims, counterclaims and rights of set-off that would have been available

to SPRe or STIC (as the case may be) in relation thereto including, without limitation, as a result of the commutation of any Transferring Policy.

11.2  Any judgment, order or award obtained by or against SPRe and/or STIC whether before or after the Effective Date which relates to any part of the Transferring Business or the reinsurances or retrocessions relating thereto and which is not fully satisfied before the Effective Date shall, on and from that date, become enforceable by or against UIC and not against SPRe and/or STIC.

11.3  All documents which would before the Effective Date have been evidence in respect of any matter for or against STIC and/or SPRe shall be admissible in evidence in respect of the same matter for or against UIC.

11.4  On and from the Effective Date, UIC shall owe to the Transferring Policyholders or to any other person the same duties of confidentiality and privacy (whether pursuant to statute or contract) as those which SPRe and/or STIC owed in relation to the Transferring Business immediately prior to the Effective Date.

11.5  On and from the Effective Date, UIC shall be entitled to direct SPRe and STIC as to the conduct of any on-going Proceedings referred to in paragraph 11.1 and UIC shall have full authority (with authority to sub-delegate) to act on behalf of SPRe and STIC in respect of any such Proceedings.

11.6  Any Proceedings commenced against F&M in connection with the Parental Guarantees in respect of the Transferring Policies shall be continued by or against UIC (in place of F&M) who shall be entitled to all defences, claims, counterclaims and rights of set-off (except those exercisable against SPRe or STIC) that would have been available to F&M in relation thereto including, without limitation, as a result of the commutation of any Transferring Policy.

## 12    Share issue

12.1  In consideration for the transfer of the Additional Assets, UIC shall issue shares in UIC to SPRe on the Effective Date equal in value to the Additional Assets.

## 13    Effective Date

13.1  Subject to paragraph 13.2, this Transfer shall become operative at 23:59 on 31 December 2007 (London time) or such other time and date as may be specified in the Order and unless this Transfer shall become operative on or before 31 May 2008 or such later date as the Court may allow upon the application of SPRe and STIC, this Transfer shall lapse.

13.2  Notwithstanding paragraph 13.1, this Transfer shall not become operative unless:

13.2.1       any modification of or addition to this Transfer or any further condition or provision affecting the same imposed by the Court (or recommended by the Court with a view to it being imposed) has been consented to by SPRe, STIC and UIC; and

13.2.2       each of the Boards of Directors of UIC, SPRe and STIC has resolved to complete the transfer of the Transferring Business.

## 14       Costs and Expenses

14.1       All costs and expenses, including, without limitation, fees and disbursements of legal and financial advisers and accountants, incurred in connection with this Transfer and the transactions contemplated by this Transfer shall be paid by the party incurring such costs and expenses.

14.2       The following costs and expenses incurred in connection with the Transfer shall be borne equally by SPRe, STIC and UIC:

14.2.1       the costs and expenses of the Independent Expert;

14.2.2       the costs and expenses of any jointly appointed barrister or other legal adviser in respect of the Transfer; and

14.2.3       the fees of the Court.

## 15       Modifications, Amendments or Additions

15.1       SPRe, STIC and UIC may consent on their own behalf and on behalf of all other persons concerned (other than the FSA) to any modification, amendment or addition to this Transfer or to any further condition or provision affecting the same which the Court may approve or impose prior to or after the sanction of this Transfer.

15.2       SPRe, STIC and UIC may amend this Transfer without further sanction of the Court to correct a manifest error provided that:

15.2.1       the FSA has been notified of the proposed amendment, and

15.2.2       the FSA has not objected to the proposed amendment within one month of being notified.

## 16       Gross-up

Where SPRe and/or STIC are entitled to receive an amount pursuant to an indemnity in this Transfer, it shall be entitled to receive such amount as, after payment of or provision for any Liability to taxation in respect of the amount receivable, will result in the receipt of an amount equal to the value of the Liability to be indemnified against.

17      **Contracts (Rights of Third Parties) Act 1999**

A person not party to this Transfer may not enforce any of its terms pursuant to the Contracts (Rights of Third Parties) Act 1999.

18      **Successors and Assigns**

This Transfer will bind and enure to the benefit of the successors and assigns of each of SPRe, STIC and UIC.

19      **Governing Law**

This Transfer shall be governed by and construed in accordance with English law.

Dated this 13th day of December 2007.