1  SELMAN BREITMAN LLP
   Michelle R. Press (SBN 163637)
2  Maria T. Wusinich (SBN 239503)
   11766 Wilshire Blvd., 6th Floor
3  Los Angeles, CA  90025-6538
   Telephone: (310) 445-0800
4  Facsimile: (310) 473-2525
   mpress@selmanbreitman.com
5  mwusinich@selmanbreitman.com

6  Attorneys for Plaintiff Unionamerica Insurance Company
   Limited, successor-in-interest to St. Paul Reinsurance
7  Company Limited

8

9                    UNITED STATES DISTRICT COURT

10                 NORTHERN DISTRICT OF CALIFORNIA

11

12  Unionamerica Insurance Company Limited,        CASE NO.    C 05 01912 BZ
    successor-in-interest to St. Paul Reinsurance
13  Company Limited,                               STIPULATION TO ALLOW PLAINTIFF TO
                                                   FILE FIRST AMENDED COMPLAINT AND
14              Plaintiff,                          FOR NAMED INSURED SUBSIDIARIES TO
                                                   BE BOUND BY JUDGMENT
15        v.

16  The Fort Miller Group, Inc., The Fort Miller
    Company, Inc. and Beeche Systems
17  Corporation,

18              Defendants.

19

20

21      Plaintiff Unionamerica Insurance Company Limited ("Union America"), successor-in-

22  interest to St. Paul Reinsurance Company Limited ("St. Paul Re), and defendants The Fort Miller

23  Group, Inc., The Fort Miller Company Inc. ("Fort Miller") and Beeche Systems Corporation

24  (collectively "defendants"), through their attorneys of record, hereby jointly stipulate as follows:

25      1.      Plaintiff may file its first amended complaint for rescission, reimbursement, unjust

26  enrichment, and declaratory relief, a copy of which is attached hereto as Exhibit 1.  Defendants'

27  stipulation as to the filing of the first amended complaint does not affect defendants' right to

28

                                            1
STIPULATION TO ALLOW PLAINTIFF TO FILE FIRST AMENDED COMPLAINT AND TO BE BOUND BY
                                      JUDGMENT
                              Case No. C 05 01912 BZ

Selman Breitman LLP
ATTORNEYS AT LAW

390146.1  1090.23834

1   respond to the first amended complaint in any manner authorized under the Federal Rules of Civil

2   Procedure.

3        2.     Defendants may file a response to the first amended complaint within thirty (30)

4   days of service.  The first amended complaint shall be deemed served on the date plaintiff e-files

5   this stipulation with the first amended complaint attached.  Should defendants not file an amended

6   answer, the Court may deem defendants' answer presently on file to have been filed in response to

7   the first amended complaint.

8        3.     Any and all limitations periods applicable to any counterclaims that defendants

9   may have were tolled during the time period that this Court stayed this action (*i.e.,* from February

10  16, 2006 through December 17, 2007).  Additionally, any limitations periods governing any

11  counterclaims that defendants may have are further tolled from January 15, 2008 until April 15,

12  2008.

13       4.     The proposed first amended complaint contains a caption that reflects the

14  substitution of Unionamerica for St. Paul Re.  On April 24, 2008, the parties filed a stipulation for

15  substitution of party, and on the same date, the Court signed the order substituting Unionamerica

16  for St. Paul Re.  Therefore, Unionamerica is now the plaintiff in this action.

17       5.     The first amended complaint seeks rescission of insurance policies that St. Paul Re

18  issued to Fort Miller and its subsidiary companies, as follows: (a) Policy No. USG10162, effective

19  from April 9, 2000 to April 9, 2001; and (b) Policy No. USG 10440, effective from April 9, 2001

20  to April 9, 2002.

21       6.     In addition to the defendants in this action, the named insureds under Policy Nos.

22  USG10162 and USG10440 (hereinafter referred to as "named insured subsidiaries") include the

23  following entities:

24       a.     The Fort Miller Service Corp.;

25       b.     Anvil Fence & Supply Co.;

26       c.     Construction Management & Scheduling, Inc.;

27       d.     Corinthian Memorial Systems, Inc.;

28

**Selman Breitman LLP**
ATTORNEYS AT LAW

Selman Breitman LLP
ATTORNEYS AT LAW

e.          The Fort Miller Company, Inc.

f.          Dellus Development Corp;

g.          Duke Concrete Products, Inc.;

h.          Fomico International;

i.          Fortress Fence Supply Co. Inc.;

j.          The Tymetal Corp.; and

k.          CMS Pyramid, LLC.

7.      Several of the above named insured subsidiaries have been dissolved since the expiration of the above policies.  Specifically, Construction Management & Scheduling, Inc.; Corinthian Memorial Systems, Inc.; Fortress Fence Supply Co. Inc. and CMS Pyramid, LLC have been dissolved.

8.      The named insured subsidiaries hereby stipulate that they will be bound by the judgment entered in the instant action, previously entitled *St. Paul Reinsurance Company Limited London v. The Fort Miller Group, Inc., et al.* and now titled *Unionamerica Insurance Company Limited, successor-in-interest to St. Paul Reinsurance Company Limited v. The Fort Miller Group, Inc., et al.,* Case No. C 05 01912 BZ, concerning any rights and obligations under the policies, including, but not limited to, any order that the policies are void *ab initio* as well as any potential rights the named insured subsidiaries may have against Unionamerica and/or St. Paul Re.  As a result of this stipulation, it is unnecessary for plaintiff to sue the named insured subsidiaries in this action.

9.      Defendants' counsel hereby warrants that he has authority to bind the named insured subsidiaries to this stipulation and that a signature by Fort Miller is not necessary.

10.      This stipulation may be signed in counterpart and will retain its full force and effect.

STIPULATION TO ALLOW PLAINTIFF TO FILE FIRST AMENDED COMPLAINT AND TO BE BOUND BY JUDGMENT
**Case No. C 05 01912 BZ**

1

DATED:  April ___, 2008          SELMAN BREITMAN LLP

2

3

4          By:_____
                    MICHELLE R. PRESS, ESQ.
                    MARIA T. WUSINICH, ESQ.

5          Attorneys for Plaintiff Unionamerica Insurance
           Company Limited, successor-in-interest to St. Paul

6          Reinsurance Company Limited

7

DATED:  April    , 2008          SQUIRE SANDERS & DEMPSEY LLP

8

9          By:_____
                    ETHAN A. MILLER, ESQ.
                    DANIEL T. BALMAT, ESQ.

10         Attorneys for DefendantsThe Fort Miller Group, Inc.,

11         The Fort Miller Company, Inc. and Beeche Systems
           Corporation

12

13

14                              **ORDER**

15         IT IS HEREBY ORDERED that the first amended complaint of plaintiff Unionamerica

16    Insurance Company Limited, successor-in-interest to St. Paul Reinsurance Company Limited, is

17    deemed filed.

18         IT IS FURTHER ORDERED that the named insured subsidiaries shall be bound by the

19    judgment in this action.

20

21

22    DATED:  April    , 2008

23

24         By:_____
                   HON. JUDGE BERNARD ZIMMERMAN
                   UNITED STATES MAGISTRATE JUDGE

25

26

27

28
                                      4
      STIPULATION TO ALLOW PLAINTIFF TO FILE FIRST AMENDED COMPLAINT AND TO BE BOUND BY
                                                                         JUDGMENT
                                                             **Case No. C 05 01912 BZ**

390146.1  1090.23834

Selman Breitman LLP
ATTORNEYS AT LAW

DATED: April 26, 2008        SELMAN BREITMAN LLP

By: _____
     MICHELLE R. PRESS, ESQ.
     MARIA T. WUSINICH, ESQ.
Attorneys for Plaintiff Unionamerica Insurance
Company Limited, successor-in-interest to St. Paul
Reinsurance Company Limited

DATED: April 25, 2008        SQUIRE SANDERS & DEMPSEY LLP

By: _____
     ETHAN A. MILLER, ESQ.
     DANIEL T. BALMAT, ESQ.
Attorneys for Defendants The Fort Miller Group, Inc.,
The Fort Miller Company, Inc. and Beeche Systems
Corporation

### ORDER

IT IS HEREBY ORDERED that the first amended complaint of plaintiff Unionamerica Insurance Company Limited, successor-in-interest to St. Paul Reinsurance Company Limited, is deemed filed.

IT IS FURTHER ORDERED that the named insured subsidiaries shall be bound by the judgment in this action.

DATED: April 28 2008



By: _____
HON. JUDGE BERNARD ZIMMERMAN
UNITED STATES MAGISTRATE JUDGE

IT IS SO ORDERED
Judge Bernard Zimmerman

STIPULATION TO ALLOW PLAINTIFF TO FILE FIRST AMENDED COMPLAINT AND TO BE BOUND BY JUDGMENT
Case No. C 05 01912 BZ

Selman Breitman LLP
ATTORNEYS AT LAW

390146.1 1090.23834

# EXHIBIT

# 1

SELMAN BREITMAN LLP
Michelle R. Press (SBN 163637)
Maria T. Wusinich (SBN 239503)
11766 Wilshire Blvd., 6th Floor
Los Angeles, CA  90025-6538
Telephone: (310) 445-0800
Facsimile: (310) 473-2525
mpress@selmanbreitman.com
mwusinich@selmanbreitman.com

Attorneys for Plaintiff Unionamerica Insurance Company
Limited, successor-in-interest to St. Paul Reinsurance
Company Limited (erroneously referred to in the original
complaint as St. Paul Reinsurance Company Limited
London)

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| Unionamerica Insurance Company Limited, successor-in-interest to St. Paul Reinsurance Company Limited, <br><br> Plaintiff <br><br> v. <br><br> The Fort Miller Group, Inc., The Fort Miller Company, Inc. and Beeche Systems Corporation, <br><br> Defendants | CASE NO.    C 05 01912 BZ <br><br> FIRST AMENDED COMPLAINT FOR RESCISSION, REIMBURSEMENT, UNJUST ENRICHMENT AND DECLARATORY RELIEF <br><br> DEMAND FOR JURY TRIAL |

COMES NOW Plaintiff Unionamerica Insurance Company Limited, successor-in-interest to St. Paul Reinsurance Company Limited, and alleges as follows:

**PARTIES**

1.     Plaintiff Unionamerica Insurance Company Limited ("Unionamerica") currently is, and was at all times mentioned herein, a corporation duly organized under the laws of England and Wales, with its principal place of business located in London, England.

1

**FIRST AMENDED COMPLAINT FOR RESCISSION, REIMBURSEMENT, UNJUST ENRICHMENT AND DECLARATORY RELIEF**
**Case No. C 05 01912 BZ**

Selman Breitman LLP
ATTORNEYS AT LAW

376671.1  1090.23834

2.      Defendant The Fort Miller Group, Inc. ("Fort Miller") is a corporation incorporated under the laws of the State of New York with its principal place of business in Schuylerville, New York.

3.      Defendant Beeche Systems Corporation ("Beeche") is a corporation incorporated under the laws of the State of New York with its principal place of business in Scotia, New York. Beeche is a subsidiary company of Fort Miller.

4.      Fort Miller and Beeche are collectively referred to hereinafter as "defendants" or "the insureds."

**JURISDICTION**

5.      This Court has jurisdiction over the subject matter of this action pursuant to 28 USC section 2201 because an actual controversy exists within the Court's jurisdiction that merits relief. This Court has jurisdiction pursuant to 28 USC section 1332(a) because the parties' citizenship is diverse and the amount in controversy exceeds $75,000, exclusive of interest and costs.

6.      This Court has personal jurisdiction over defendants, and each of them, as they have purposely availed themselves of the privilege of conducting activities within California. Further, as part of its remedy in this action, plaintiff seeks reimbursement for fees, costs and indemnity plaintiff's predecessor-in-interest paid, under a reservation of rights, on behalf of defendants in certain underlying actions pending in the Superior Court of California, County of San Francisco. The underlying actions at issue action arose out of defendants' activities in California. As such, defendants' obligation to pay damages to plaintiff directly stems from defendants' activities in California. Thus, it is reasonable for defendants to be subject to jurisdiction in California.

**VENUE**

7.      Venue is proper in this judicial district pursuant to 28 USC section 1391(a)(2) because the underlying actions for which defendants sought coverage are currently pending in the San Francisco Superior Court, although they have settled, and will be dismissed shortly. As such, a substantial part of the events or omissions giving rise to these claims occurred here. Venue is also

2

**FIRST AMENDED COMPLAINT FOR RESCISSION, REIMBURSEMENT, UNJUST ENRICHMENT AND DECLARATORY RELIEF**
Case No. C 05 01912 BZ

Selman Breitman LLP
ATTORNEYS AT LAW

376671.1  1090.23834

1  proper in this judicial district pursuant to 28 USC section 1391(c) because the defendants, and each

2  of them, are corporations, and are subject to personal jurisdiction here because they residents of this

3  judicial district.

## GENERAL BACKGROUND

4

5      8.      Fort Miller's business concerns the manufacturing, construction and service

6  industries, including the manufacture of pre-cast concrete, concrete block, and aluminum and steel

7  gates.

8      9.      At all relevant times hereto, Beeche, an owned subsidiary of Fort Miller,

9  manufactured Engineered Access Systems, including under deck platform systems; truss exterior

10  wall multi-stage platform systems; interior truss platform systems; interior truss shield wall systems;

11  above deck tower platforms; under deck tower platforms; traffic shield platforms; containment roof

12  platforms; blasting platforms and access baskets (hereinafter referred to as "Traveler Systems").

13  Beeche also manufactured the individual component parts of the Traveler Systems.  Such

14  components include suspension chord assemblies, grating clips, railing sections, wire ropes,

15  turnbuckles, roller assemblies, railing assemblies and enclosure screens.

## THE 1999 POLICY

16

17      10.      On or about May 19, 1999, Fort Miller submitted a commercial general liability

18  ("CGL") Gap policy application ("The 1999 Application") to U.S. Risk on behalf of itself and its

19  subsidiaries, including Beeche, through its producer, Associates of Glens Falls, Inc.

20      11.      Traditional CGL policies expressly exclude coverage for damage to an insured's

21  own "product" or "work" because the cost of replacing or repairing the insured's defective product

22  or work is considered a business risk that must be borne by the insured.  Accordingly, in a

23  traditional CGL policy, the insurer undertakes the risk the insured will be liable for damage to the

24  property of <u>others</u>, not damage to the insured's own product or work.  Unlike traditional CGL

25  policies, CGL Gap policies may provide coverage for the insured's liability for damage to the

26  insured's products or completed work.

27

28

Selman Breitman LLP
ATTORNEYS AT LAW

3

**FIRST AMENDED COMPLAINT FOR RESCISSION,
REIMBURSEMENT, UNJUST ENRICHMENT AND DECLARATORY RELIEF
Case No. C 05 01912 BZ**

376671.1  1090.23834

Selman Breitman LLP
ATTORNEYS AT LAW

12.     Similarly, traditional CGL policies exclude coverage for liability the insured assumes in a contract, if the insured would not be liable in tort absent the contract.  In contrast, CGL Gap policies may provide coverage for the failure of an insured to perform a contract in accordance with its terms.

13.     As such, CGL Gap policies serve to fill in some of the coverage "gaps" left open by traditional CGL policies, and apply in conjunction with traditional CGL policies to provide an insured a broader spectrum of coverage during an overlapping time period.

14.     Plaintiff is informed and believes and based upon such information and belief alleges that, in 1999, U.S. Risk Underwriters, Inc. ("U.S. Risk") acted as the underwriting agent for CNA Reinsurance Company Limited ("CNA Re"), with authority to underwrite CGL Gap insurance policies for CNA Re.

15.     Based upon information and belief, the primary method through which U.S. Risk determined whether or not to extend CGL Gap insurance coverage was to require the applicant to fill out a detailed application containing questions about the insured's products, including information about any faulty conditions within any of the insured's products manufactured prior to the date of the application.

16.     Among other things, The 1999 Application contained specific questions regarding the value of the applicant's products.  Fort Miller's disclosures and representations in direct response to those questions were absolutely essential for proper assessment of the risk in question (*i.e.,* the risk and value of potential claims arising from the insured's "products") since only where the risk is properly assessed can an underwriter set an appropriate premium.

17.     When asked on The 1999 Application to describe the nature of its business and to describe its operations, Fort Miller responded: "Consists of 8 companies in manufacturing, construction and service industries.  Products manufactured are precast concrete, concrete block, aluminum and steel gates."

**FIRST AMENDED COMPLAINT FOR RESCISSION, REIMBURSEMENT, UNJUST ENRICHMENT AND DECLARATORY RELIEF**
**Case No. C 05 01912 BZ**

376671.1  1090.23834

18.     The 1999 Application contained a series of questions for applicants applying for coverage for "Damage to the Insureds' Product." Fort Miller responded to specific questions in that section as follows (responses delineated through underlining):

1.   Describe in detail the products manufactured by your company: <u>Precast concrete incl. bridge decks, road barriers, decorative concrete blocks, burial vaults.</u>

**And** attach any product brochures that you make available to customers. <u>See attached.</u>

* * *

4.   What is the **highest** value of a product that you manufacture? <u>$100,000.</u>
And, describe this particular product: <u>Example - Bridge deck.</u>

5.   What is the **average** value was of a product you manufacture? <u>Less than $1,000.</u>

6.   During the last five years do you know of a product that you manufactured or sold which was damaged or destroyed as a result of a condition within the product itself? <u>No.</u> (If the answer is yes, please explain your answer in detail.)

7.   Are you aware of any faulty condition within any of your products, manufactured prior to the date of this application, that you believe could possibly damage those products at a later date? <u>No.</u>
If yes, please elaborate and describe this condition.

8.   Do you plan on introducing a new product in the marketplace during the next 12 months? <u>No.</u> (If yes, please describe your intentions in detail.)

19.     The 1999 Application also contained a series of questions for applicants applying for coverage for "Damage to Impaired Property or Property Not Physically Injured." Fort Miller responded to specific questions in that section as follows:

1.   Describe in detail the products manufactured by your company: <u>See prior description.</u>

**And** attach any product brochures

2.   Specifically describe the intended use of your product and describe the types of other property which may incorporate your product as a component part. <u>Bridges – gates – cemetery vaults.</u>

5

**FIRST AMENDED COMPLAINT FOR RESCISSION, REIMBURSEMENT, UNJUST ENRICHMENT AND DECLARATORY RELIEF**
**Case No. C 05 01912 BZ**

376671.1  1090.23834

* * *

4. Have you had a situation in the last 5 years whereby someone lost the use of their equipment, building or any other property because their property contained your product which was thought or known to be defective, and so couldn't be used until you replaced or repaired your product?  No.  If yes, please describe the situation in detail.

5. Are you aware of any faulty condition within any of your products, manufactured prior to the date of this application, that are now component parts or a part if any equipment, machinery, buildings or other property which may not be fully usable in the future because it contains your product (which is thought to be faulty or defective)?  No.  If yes, please elaborate and describe:

20.    Directly above the signature the space for the applicant's signature, The 1999 Application contained the following warranty language in block capital letters:

"WARRANTY: I WARRANT TO THE INSURANCE COMPANY THAT ALL INFORMATION CONTAINED WITHIN THIS CGL GAP POLICY APPLICATION IS TRUE AND THAT IT SHALL BE THE BASIS OF THE POLICY OF INSURANCE AND DEEMED INCORPORATED THEREIN, SHOULD THE INSURANCE COMPANY EVIDENCE ITS ACCEPTANCE OF THIS APPLICATION BY THE ISSUANCE OF A POLICY."

21.    Fort Miller signed and dated The 1999 Application May 19, 1999.

22.    Fort Miller attached to The 1999 Application multiple brochures detailing products manufactured, supplied and serviced by Fort Miller and its subsidiary companies; however, Fort Miller did not include a single brochure describing or even mentioning the Traveler Systems manufactured by Beeche.

23.    Based upon information and belief, CNA Re, not a party to this litigation, relied upon The 1999 Application as submitted, and issued a CGL GAP policy to "The Fort Miller Group, Inc., et al," providing coverage to Fort Miller and its subsidiaries, including Beeche, for "Damage to Your Product" and "Damage to Impaired Property or Property Not Physically Injured," designated as Policy No. USG10047, effective from April 26, 1999 to April 9, 2000.

Selman Breitman LLP
ATTORNEYS AT LAW

6

**FIRST AMENDED COMPLAINT FOR RESCISSION, REIMBURSEMENT, UNJUST ENRICHMENT AND DECLARATORY RELIEF**
**Case No. C 05 01912 BZ**

1

### DEFENDANTS' TRAVELER SYSTEMS

2      24.    In December 1999, seven months after Fort Miller submitted The 1999 Application

3  for CGL Gap insurance coverage on behalf of itself and its subsidiaries, Beeche contracted with

4  Robison-Prezioso, Inc. ("RPI") to supply several Engineered Access Systems (hereinafter "Traveler

5  Systems") for use on a project to retrofit the Oakland Bay Bridge ("the Project").  Specifically,

6  Beeche agreed to provide three (3) Traveler Systems to RPI for a total price of $1,650,000, or

7  $550,000 per Traveler System.  Beeche designed, manufactured, and delivered the Traveler Systems

8  at various times in 2000.

9      25.    Beeche's proposal letter to RPI's President dated December 8, 1999 reflects that RPI

10 and Beeche bargained for complete Travelers Systems, and that Beeche's products were entire

11 systems, and not merely "component parts:"

12

> PRICE AND DELIVERY
>
> 13
>
> The price for each platform system described above is Five hundred
> fifty thousand dollars ($550,000.00).  The total price for all three (3)
> 14  platform systems is One million six hundred fifty thousand dollars.
> This price is F.O.B. project site in San Francisco, CA, no taxes
> 15  included.  Delivery of the equipment will be made in full truckload
> quantities.  Shipment is anticipated to commence in mid-February,
> 16  2000.  Please note that this discounted price per platform system is
> contingent on an order for a total of seven (7) platform systems,
> 17  which include four (4) similar systems purchased by California
> Engineering Contractors/Modern Continental Construction JV.

18

19      26.    Beeche's subcontract agreement with RPI, referring in numerous instances to

20 "systems," also reflects that complete Travelers Systems, rather than component parts, were the

21 subject of the contract:

22

> 2.1    Each platform system shall utilize the existing traveler rails for
> 23          suspension and traversing.
>
> 24  2.5    Subcontractor warrants the design, materials, equipment and
> supplies proposed within Attachment 'A' shall provide a
> 25          traveling containment and access system…
>
> 26  3.5    Delivery of all equipment, materials and supplies for the
> construction of each complete suspended traveler shall
> 27          conclude as follows:

28

7

**FIRST AMENDED COMPLAINT FOR RESCISSION,
REIMBURSEMENT, UNJUST ENRICHMENT AND DECLARATORY RELIEF
Case No. C 05 01912 BZ**

*Selman Breitman LLP*
ATTORNEYS AT LAW

Selman Breitman LLP
ATTORNEYS AT LAW

| 1st traveler system | 7 February 2000 |
| 2nd traveler system | 6 March 2000 |
| 3rd traveler system | 20 March 2000 |

27.     Beeche's subcontract agreement specifically stated that payment was dependent on the delivery of each **completed** Travelers System, not on the delivery of individual component parts of the systems:

5.1     The Contract price for all work done by Subcontract as required herein shall be paid as follows:

(a) Net 30 upon delivery of each complete suspended traveling unit.

28.     California Engineering Contractors/MCC ("CEC/MCC") entered into a contract with the State of California as general contractor to perform work on the Project.  Thereafter, CEC/MCC negotiated with Beeche regarding the purchase of several Traveler Systems. Specifically, in February 2000, CEC/MCC issued a letter of intent to purchase two (2) Traveler Systems from Beeche.  Later that month, CEC/MCC issued a second letter of intent to purchase four (4) additional Traveler Systems.  CEC/MCC and Beeche did not enter into any formal written contracts for the purchase of these four systems, which cost a total of $2,294,284.  Beeche designed, engineered, manufactured and delivered the Traveler Systems to CEC/MCC in 2000 and thereafter.

## THE ST. PAUL RE CGL GAP POLICIES

29.     Upon expiration of the CNA Re policy, Fort Miller renewed its CGL Gap coverage with St. Paul Reinsurance Company Limited ("St. Paul Re") under the same terms and conditions as the previous policy CNA Re issued.  U.S. Risk acted as the managing general agent and underwriter for both the CNA Re and the St. Paul Re policies.

30.     Specifically, in reliance upon Fort Miller's representations concerning its products and work, St. Paul Re issued a CGL GAP policy to Fort Miller designated as Policy No. USG10162, effective from April 9, 2000 to April 9, 2001.  Similar to the preceding CNA Re policy, Policy No. USG10162 provided coverage for "Damage to Your Product" and "Damage to Impaired Property or Property Not Physically Injured."  A true and correct copy of the 2000-2001 policy is attached hereto as Exhibit A.

8

**FIRST AMENDED COMPLAINT FOR RESCISSION, REIMBURSEMENT, UNJUST ENRICHMENT AND DECLARATORY RELIEF
Case No. C 05 01912 BZ**

31.     Upon information and belief, in January 2001, U.S. Risk transmitted correspondence to Fort Miller's agent, Associates of Glens Falls, inquiring as to whether Fort Miller wanted to renew its CGL Gap policy.  U.S. Risk's letter stated: "If there have been any changes during the policy year or upon renewal, we will require a renewal CGL Gap Policy Application.  If there have been no changes, please advise and we will offer a quote based upon the expiring information, subject to renewal application if coverage is bound . . .."  Associates of Glens Falls responded on behalf of Fort Miller that there would be no changes in exposures.

32.     On or about February 7, 2001, Fort Miller submitted a new application for CGL Gap coverage to U.S. Risk (The "2001 application").  In response to a request on the application for copies of company or product brochures, advertising material, specifications, etc. to help evaluate Fort Miller's operations, Fort Miller responded: "See your prior file since 4/99 issuance date."

33.     Similar to the prior applications, The 2001 Application contained a series of questions under the section addressing coverage for "Damage to Your Product."  In response to the question, "What is the **highest** value of a product that you manufacture?"  Fort Miller again responded: "$100,000," and described it as a "Bridge deck."  Fort Miller also represented that the average value of a product it manufactured was "less than $1,000."  Fort Miller again represented that it knew of no product that it manufactured or sold that was damaged or destroyed as a result of a condition within the product itself.  Similarly, Fort Miller represented that it was not aware of any faulty condition within any of its products, manufactured prior to the date of the application, that it believed could possibly damage those products at a later date.

34.     The 2001 Application also contained a series of questions for applicants applying for coverage for "Damage to Impaired Property or Property Not Physically Injured."  Fort Miller responded to specific questions in that section as follows:

1.  Describe in detail the products manufactured by your company:
    <u>See prior description.</u>
    **And** attach any product brochures.
    * * *

9

Selman Breitman LLP
ATTORNEYS AT LAW

376671.1  1090.23834

3.  Specifically describe the intended use of your product and describe the types of other property which may incorporate your product as a component part.

Bridge gates, cemetery vaults.

5.  Have you had a situation in the last 5 years whereby someone lost the use of their equipment, building or any other property because their property contained your product which was thought or known to be defective, and so couldn't be used until you replaced or repaired your product?  No.  If yes, please describe the situation in detail.

6.  Are you aware of any faulty condition within any of your products, manufactured prior to the date of this application, that are now component parts or a part if any equipment, machinery, buildings or other property which may not be fully usable in the future because it contains your product (which is thought to be faulty or defective)?  No.  If yes, please elaborate and describe:

35.  As with the prior applications, The 2001 Application contained the following warranty language in block capital letters above the signature line:

"WARRANTY: I WARRANT TO THE INSURANCE COMPANY THAT ALL INFORMATION CONTAINED WITHIN THIS CGL GAP POLICY APPLICATION IS TRUE AND THAT IT SHALL BE THE BASIS OF THE POLICY OF INSURANCE AND DEEMED INCORPORATED THEREIN, SHOULD THE INSURANCE COMPANY EVIDENCE ITS ACCEPTANCE OF THIS APPLICATION BY THE ISSUANCE OF A POLICY."

36.  In reliance on the CGL Gap policy application Fort Miller submitted on or about February 7, 2001, as well as its prior applications and attached brochures, St. Paul Re issued Policy No. USG10440, effective from April 9, 2001 to April 9, 2002.  As with the previous policy, Policy No. USG10440 provided coverage for "Damage to Your Product" and "Damage to Impaired Property or Property Not Physically Injured."

37.  Endorsement No. 1 to the 2001-2002 policy lists the following entities as named insureds under the policy: The Fort Miller Group, Inc.; The Fort Miller Co., Inc.; The Fort Miller Service Corp.; Anvil Fence & Supply Co., Inc.; Beeche Systems Corp. (own liability coverage but included for property and other coverages); Construction Management & Scheduling, Inc.; Corinthian Memorial Systems, Inc.; Dellus Development Corp.; Duke Concrete Products, Inc.;

Selman Breitman LLP
ATTORNEYS AT LAW

10

376671.1  1090.23834

1    Fomico International; Fortress Fence & Supply Co. Inc.; The Tymetal Corp. and CMS Pyramid,

2    LLC.  A true and correct copy of the 2001-2002 policy is attached hereto as Exhibit B.

3           38.     Policy Nos. USG10162 and USG10440 ("the policies") contain a "per occurrence"

4    limit of $1,000,000 for "Damage to Your Product" and an aggregate limit of $2,000,000.

5           39.     The Conditions sections of the policies provide as follows:

6           6.     Representations
7                  By accepting this policy, you agree:
8                  a.  The statements on the Declaration Page are accurate and complete;
                   b.  Those statements are based upon representations you made to us
9                  c.  We have issued this policy in reliance upon your representations; and
10                 d.  The statements made in the Application are the representations and
11                     warranties of the insured; that such statements are true; that such
                       statements shall be deemed material to the acceptance of the risk or the
12                     hazard assume by us under this policy; and that this policy is issued in
                       reliance upon the truth and accuracy of such representations.
13

14          **THE UNDERLYING ACTIONS & THE RESCISSION ACTION**

15          40.     On January 4, 2002, one of the Traveler Systems in use on the Project failed, causing

16    damage to the Traveler System itself, injuries to one or more individuals, and alleged delays in

17    completion of the Project.

18          41.     On December 1, 2003, RPI filed suit against Fort Miller, Beeche and others entitled

19    *Robinson-Prezioso, Inc. v. Beeche Systems Corp., et. al.*, San Francisco County Superior Court Case

20    No. CGC-03-426856 (the "RPI Suit").  The RPI Suit alleged, among other things, that RPI suffered

21    damages because the Traveler Systems were defective and were not timely delivered.

22          42.     On January 30, 2004, CEC/MCC filed suit against Fort Miller, Beeche and others

23    entitled *California Engineering Contractors, et. al. v. Beeche Systems Corp., et. al.*, San Francisco

24    County Superior Court Case No. CGC-04-428416 (the "CEC/MCC Suit").  The CEC/MCC Suit

25    alleged, among other things, that CEC/MCC suffered damages because the Traveler Systems were

26    defective and were not timely delivered.

27

28

Selman Breitman LLP
ATTORNEYS AT LAW

**FIRST AMENDED COMPLAINT FOR RESCISSION,**
**REIMBURSEMENT, UNJUST ENRICHMENT AND DECLARATORY RELIEF**
**Case No. C 05 01912 BZ**

376671.1  1090.23834

43.     Defendants tendered the defense and indemnification of the RPI Suit and the CEC/MCC Suit to St. Paul Re.  St. Paul Re acknowledged defendants' tenders and advised that while investigating the claims, it expressly reserved the following rights: (1) the right to rescind the policies if the insured(s) materially misrepresented facts when applying for the policy; (2) the right to seek reimbursement for any and all fees or costs for which no coverage is available under the policies; and (3) the right to file a declaratory relief action to determine any coverage issues existing at the time of the reservation or any issues arising later.  Thereafter, St. Paul Re agreed to defend defendants in the RPI Suit and CEC/MCC Suit under a complete reservation of rights, including all rights it previously reserved.

44.     On March 17, 2005, the San Francisco Superior Court issued an order consolidating the CEC/MCC Suit with the RPI Suit for pre-trial and discovery purposes.  The CEC/MCC Suit and the RPI Suit are collectively referred to hereinafter as "the underlying action."

45.     In or about May 2005, St. Paul Re gave notice of its intent to rescind the policies through the complaint it filed in this case stating causes of action for rescission and declaratory relief.  Even though it filed a complaint for rescission of the policies, St. Paul Re continued to defend the insureds in the underlying action.

46.     On or about August 1, 2007, RPI and CEC served Offers to Compromise under Code of Civil Procedure section 998 totaling $2 million on Fort Miller, Beeche and the other defendants in the underlying action.

47.     On August 23, 2007, the parties to the underlying action and the various insurance carriers participated in a mediation in the underlying action.

48.     During the mediation, coverage counsel for defendants claimed that the settlement demand of $2 million ($1 million for each case) was reasonable, and made demand upon St. Paul Re to contribute to a settlement that would extricate the insureds from the underlying action.

49.     In response, St. Paul Re gave notice in writing that it intended to proceed with its rescission action; it intended to seek reimbursement of all amounts it expended on behalf of the insureds (*i.e.*, any and all amounts paid in indemnity as well as all attorneys' fees and costs

Selman Breitman LLP
ATTORNEYS AT LAW

12

**FIRST AMENDED COMPLAINT FOR RESCISSION, REIMBURSEMENT, UNJUST ENRICHMENT AND DECLARATORY RELIEF**
**Case No. C 05 01912 BZ**

expended in defense of the underlying action); and, it intended to seek pre-judgment interest. Further, St. Paul Re also advised that it intended its writing to fall within the parameters of the California Supreme Court's decision in *Blue Ridge Ins. Co. v. Jacobsen* (2001) 25 Cal.4th 489. In response, coverage counsel for the insureds advised that the insureds did not agree with St. Paul Re's rescission action. At that time, St. Paul Re gave the insureds the option set forth in the *Blue Ridge* case; specifically, the insureds had the option of withdrawing their tenders and assuming their own defense. The insureds rejected this option and continued to make demand upon St. Paul Re to settle the underlying action.

50. The parties to the underlying action reached a settlement of all claims in that action through contributions of various insurance carriers. St. Paul Re agreed to pay and did pay $671,000 under a reservation of rights to rescind the policies and seek reimbursement for amounts paid under to the policies.

51. On or about November 13, 2007, St. Paul Re returned the premiums Fort Miller had paid for the St. Paul Re policies (*i.e.,* Policy No. USG10162 and Policy No. 10440) totaling $7,652.84.

## FIRST CLAIM FOR RELIEF

### *(Rescission against All Defendants - Policy No. USG10162)*

52. Plaintiff repeats and incorporates by reference all preceding paragraphs above, in their entirety, as though fully set forth herein.

53. California Code of Civil Procedure section 1689 provides that a party to a contract may rescind the contract under the circumstances provided for in Insurance Code sections 331, 338, 359, 447, 1904 and 2030.

54. California Insurance Code section 331 provides:

> **"Effect of Concealment. Concealment, whether intentional or unintentional, entitles the injured party to rescind insurance."**

55. Insurance Code section 359 states:

> **"Effect of Material False Representation.** If a representation is false in material point, whether affirmative or promissory, the

13

**FIRST AMENDED COMPLAINT FOR RESCISSION, REIMBURSEMENT, UNJUST ENRICHMENT AND DECLARATORY RELIEF Case No. C 05 01912 BZ**

Selman Breitman LLP
ATTORNEYS AT LAW

1   injured party is entitled to rescind the contract from the time the
2   representation become false."

3      56.    During the course of investigating the RPI Claim and the CEC/MCC claim at issue

4   in the underlying action, St. Paul Re learned that Beeche manufactures, sells, and holds itself out

5   as the producer of Traveler Systems.  St. Paul Re also learned that the systems at issue in the

6   underlying action were valued at approximately $550,000 each, an amount far greater than the

7   amount defendants represented in their applications as the highest value of the products they

8   manufacture.

9      57.    Because the CGL Gap policies obligated the insurer to cover losses arising from

10  damage to defendants' products, defendants' accurate representations regarding the nature and

11  value of their products in the insurance applications they submitted were absolutely material to the

12  underwriting process.  Indeed, the highest product value and average product value were two key

13  pieces of data used to calculate defendants' premiums.

14     58.    In addition, upon information and belief, there were claims against Beeche in the

15  five years prior to the Fort Miller applications whereby someone lost the use of their equipment,

16  building or any other property because their property contained Beeche's product, which was

17  thought or known to be defective.  Furthermore, upon information and belief, there were faulty

18  conditions within products manufactured prior to the date of The 2001 Application that became

19  component parts or a part of equipment, machinery, buildings or other property.

20     59.    St. Paul Re reasonably relied upon defendants' representations in their applications

21  for insurance coverage at the time St. Paul Re was determining whether to issue the policies.

22     60.    St. Paul Re issued Policy Number USG10162, effective April 9, 2000 to April 9,

23  2002 as a result of defendants' concealment and material misrepresentations in the applications for

24  insurance.  If St. Paul Re had known the true facts, it would not have issued Policy Number

25  USG10162, or it would have issued the policy, but charged a higher premium commensurate with

26  the value of the products it was insuring.

27

28

Selman Breitman LLP
ATTORNEYS AT LAW

14

**FIRST AMENDED COMPLAINT FOR RESCISSION,
REIMBURSEMENT, UNJUST ENRICHMENT AND DECLARATORY RELIEF
Case No. C 05 01912 BZ**

Selman Breitman LLP
ATTORNEYS AT LAW

61.    Because of defendants' misrepresentations, St. Paul Re was not aware at the time it issued Policy Number USG10162 that defendants manufactured and sold massive Traveler Systems.  Accordingly, St. Paul Re did not understand the full value of the risk it was insuring under the policy.

62.    St. Paul Re fully performed all terms and conditions of Policy Number USG10162, except those it was prevented or excused from performing by the acts of defendants, and each of them.

63.    St. Paul Re transmitted to the defendants all premiums St. Paul Re received in connection with Policy No. USG10162 by forwarding a check to defendants' counsel; however, defendants refused the offer and returned the check.

64.    As a result of defendants' misrepresentations, concealment and/or failure to disclose facts and information truthfully, plaintiff, as successor in interest to St. Paul Re, is entitled to rescind Policy Number USG10162.

## SECOND CLAIM FOR RELIEF

### (Rescission against All Defendants - Policy No. USG10440)

65.    Plaintiff repeats and incorporates by reference all preceding paragraphs above, in their entirety, as though fully set forth herein.

66.    During the course of investigating the RPI Claim and the CEC/MCC claim, St. Paul Re learned that Beeche manufactures, sells, and holds itself out as the producer of Traveler Systems.  St. Paul Re also learned that the systems at issue in the RPI lawsuit were valued at approximately $550,000 each, an amount far greater than the amount defendants represented in their applications as the highest value of the products they manufacture.

67.    Because the policies obligated the insurer to cover losses arising from damage to defendants' products, defendants' accurate representations regarding the nature and value of their products in the insurance applications they submitted were absolutely material to the underwriting process.  Indeed, the highest product value and average product value were two key pieces of data used to calculate defendants' premiums.

15

376671.1  1090.23834

68.     In addition, upon information and belief, there were claims against Beeche in the five years prior to the Fort Miller applications whereby someone lost the use of their equipment, building or any other property because their property contained Beeche's product, which was thought or known to be defective.  Furthermore, upon information and belief, there were faulty conditions within products manufactured prior to the date of The 2001 Application that became component parts or a part of equipment, machinery, buildings or other property.

69.     St. Paul Re reasonably relied upon defendants' representations in their applications for insurance coverage at the time St. Paul Re was determining whether to issue the policies.

70.     St. Paul Re issued Policy Number USG10440 as a result of defendants' concealment and material misrepresentations in the applications for insurance.  If St. Paul Re had known the true facts, it would not have issued Policy No. USG10440, or it would have issued the policy, but charged a higher premium commensurate with the value of the products it was insuring.

71.     Because of defendants' misrepresentations, St. Paul Re was not aware at the time it issued Policy No. USG10440 that defendants manufactured and sold massive Traveler Systems. Accordingly, St. Paul Re did not understand the full value of the risk it was insuring under the policy.

72.     St. Paul Re fully performed all terms and conditions of the policies, except those it was prevented or excused from performing by the acts of defendants, and each of them.

73.     St. Paul Re repaid to the defendants all premiums St. Paul Re received in connection with Policy No. USG10440 by forwarding a check to defendants' counsel; however, defendants refused the offer and returned the check.

74.     As a result of defendants' misrepresentations, concealment and/or failure to disclose facts and information truthfully, plaintiff, as successor in interest to St. Paul Re, is entitled to rescind Policy No. USG10440.

16

Selman Breitman LLP
ATTORNEYS AT LAW

376671.1  1090.23834

Selman Breitman LLP
ATTORNEYS AT LAW

## THIRD CLAIM FOR RELIEF

### *(Reimbursement against All Defendants)*

75.     Plaintiff re-alleges and incorporates by this reference all preceding paragraphs above, in their entirety, as though fully set forth herein.

76.     St. Paul Re issued Policy Numbers USG10162 and USG10440 as a result of defendants' concealment and material misrepresentations in their applications for insurance.  If St. Paul Re had known the true facts, it would not have issued the policies, or it would have issued the policies but charged a higher premium commensurate with the value of the products it was insuring.

77.     Rescission of the policies places each party into the position each party was in prior to the issuance of the insurance policies.

78.     Because the insurance policies are subject to rescission, St. Paul Re never had an obligation to defend or indemnify defendants under Policy Numbers USG10162 and USG10440 inasmuch the policies are considered void *ab initio, i.e,* as if those policies never existed.

79.     Under Civil Code section 1691(b), the parties must restore "everything of value" they received under the policies, *i.e.,* the consideration or benefits made to each other.  St. Paul Re is entitled to reimbursement from defendants for the entire amount St. Paul Re paid in defending and indemnifying the insureds, plus pre-judgment interest, minus any benefits given by defendants to St. Paul Re.

80.     St. Paul Re reserved its right to seek reimbursement from defendants for defense and indemnity amounts that St. Paul Re paid, but never owed, in connection with the underlying action.

81.     Plaintiff, as successor in interest to St. Paul Re, has the right to obtain reimbursement directly from the defendants for the entire amounts St. Paul Re paid in defense and indemnity of the underlying action, plus pre-judgment interest calculated at the legal rate.

**FIRST AMENDED COMPLAINT FOR RESCISSION, REIMBURSEMENT, UNJUST ENRICHMENT AND DECLARATORY RELIEF**
**Case No. C 05 01912 BZ**

**FOURTH CLAIM FOR RELIEF**

*(Unjust Enrichment against All Defendants)*

82.     Plaintiff repeats and incorporates by reference all preceding paragraphs above, in their entirety, as though fully set forth herein.

83.     The policies St. Paul Re issued to defendants are void *ab initio*.

84.     St. Paul Re was never obligated to pay the amounts incurred in defending defendants in the underlying action nor was St. Paul Re obligated to pay the amounts incurred in settlement of the underlying action.

85.     St. Paul Re reserved its right to seek reimbursement from defendants for defense and indemnity payments that St. Paul Re made, but never owed, in connection with the underlying action.

86.     Defendants were unjustly enriched by St. Paul Re's payment of defense fees in the underlying action and St. Paul Re's indemnity payment in settlement of the underlying action.

87.     Pursuant to Civil Code Section 1691, St. Paul Re is entitled to reimbursement for all defense and indemnity payments St. Paul Re paid on defendants' behalf under the policies, plus pre-judgment interest at the legal rate.

**FIFTH CLAIM FOR RELIEF**

*(Declaratory Relief against All Defendants)*

88.     Plaintiff repeats and incorporates by reference all preceding paragraphs above, in their entirety, as though fully set forth herein.

89.     As a result of defendants' misrepresentations, concealment and/or failure to disclose the true risk of exposure faced by St. Paul Re in connection with issuing Policy Nos. USG10162 and USG10440 to the defendants, the policies are subject to rescission.

90.     Plaintiff understands and believes that defendants contend that they did not misrepresent, conceal from, or fail to disclose information to St. Paul Re material to the risk to be undertaken by St. Paul Re, or that for other reasons their failure to advise St. Paul Re, plaintiff or

Selman Breitman LLP
ATTORNEYS AT LAW

376671.1   1090.23834

18

**FIRST AMENDED COMPLAINT FOR RESCISSION, REIMBURSEMENT, UNJUST ENRICHMENT AND DECLARATORY RELIEF**
**Case No. C 05 01912 BZ**

1    U.S. Risk of the existence of the true facts concerning their manufacture and sale of the Traveler

2    Systems does not warrant rescission of the policies.

3           91.    An actual, present and bona fide controversy now exists between plaintiff and

4    defendants regarding their respective rights, duties and obligations under the policies with respect

5    to the underlying action.

6           92.    A judicial declaration is necessary to establish the parties' rights and duties with

7    respect to Policy Nos. USG10162 and USG10440.

8           93.    Plaintiff seeks a declaration that the policies are subject to rescission, extinguished

9    *ab initio* and are void and unenforceable from the outset.

10           94.    Further, plaintiff seeks a declaration that the defendants must restore everything of

11    value they received under the policies, including all amounts St. Paul Re paid on defendants'

12    behalf in defense and settlement of the underlying action.

13

14                      **PRAYER FOR RELIEF**

15           WHEREFORE, plaintiff prays for judgment against the defendants, and each of them, as

16    follows:

17           1.    On the first cause of action for rescission of Policy Number USG10162 against all

18    defendants:

19               (a)    A judicial declaration that Policy No. USG10162 should be and hereby is

20                   rescinded *ab initio*;

21               (b)    An order than Policy No. USG10162 is rescinded *ab initio;*

22               (c)    For attorneys' fees;

23               (d)    For costs and expenses of suit herein; and

24               (e)    For such other relief as the court deems just and proper.

25           2.    On the second cause of action for rescission of Policy Number USG10440 against

26    all defendants:

27

28

Selman Breitman LLP
ATTORNEYS AT LAW

19

376671.1  1090.23834

1          (a)     A judicial declaration that Policy No. USG10440 should be and hereby is

2                  rescinded *ab initio*;

3          (b)     An order than Policy No. USG10440 is rescinded *ab initio;*

4          (c)     For attorneys' fees;

5          (d)     For costs and expenses of suit herein; and

6          (e)     For such other relief as the court deems just and proper.

7    3.    On the third cause of action for reimbursement against all defendants:

8          (a)     For general and special damages according to proof at the time of trial as

9                  provided by law;

10         (b)     For full reimbursement of all amounts plaintiff paid under the policies, and

11                 in particular, all defense and indemnity payments relating to the underlying

12                 action.

13         (c)     For pre-judgment interest calculated from the date of each individual

14                 payment;

15         (d)     For post-judgment interest;

16         (e)     For attorneys' fees;

17         (f)     For costs and expenses of suit herein; and

18         (g)     For such other relief as the court deems just and proper.

19   4.    On the fourth cause of action for unjust enrichment against all defendants:

20         (a)     For general and special damages according to proof at the time of trial as

21                 provided by law;

22         (b)     For full reimbursement of all amounts plaintiff paid under the policies, and

23                 in particular, all defense and indemnity payments relating to the underlying

24                 action;

25         (c)     For pre-judgment interest calculated from the date of each individual

26                 payment;

27         (d)     For post-judgment interest,

28

**Selman Breitman LLP**
ATTORNEYS AT LAW

**FIRST AMENDED COMPLAINT FOR RESCISSION,**
**REIMBURSEMENT, UNJUST ENRICHMENT AND DECLARATORY RELIEF**
**Case No. C 05 01912 BZ**

376671.1  1090.23834

1      (e)    For attorneys' fees;

2      (f)    For costs and expenses of suit herein; and

3      (g)    For such other relief as the court deems just and proper.

4      3.    On the fifth cause of action for declaratory relief against all defendants:

5      (a)    A judicial declaration that each party is required to restore everything of

6  value it received pursuant to the policies;

7      (c)    A judicial declaration that the policies are subject to rescission,

8  extinguished *ab initio* and are void and unenforceable from the outset; and

9      (c)    For such other relief as the court deems just and proper.

12  DATED: April ⁄, 2008        SELMAN BREITMAN LLP

By:

MICHELLE R. PRESS
MARIA T. WUSINICH
Attorneys for Plaintiff Unionamerica Insurance
Company Limited, successor-in-interest to St. Paul
Reinsurance Company Limited

### DEMAND FOR JURY TRIAL

Plaintiff hereby requests a jury trial for this action.

DATED: April ⁄, 2008        SELMAN BREITMAN LLP

By:

MICHELLE R. PRESS
MARIA T. WUSINICH
Attorneys for Plaintiff Unionamerica Insurance
Company Limited, successor-in-interest to St. Paul
Reinsurance Company Limited

21

Selman Breitman LLP
ATTORNEYS AT LAW

376671.1 1090.23834