SELMAN BREITMAN LLP
Michelle R. Press (SBN 163637)
Laura R. Ramos (SBN 186326)
Ryan J. Van Steenis (SBN 254542)
11766 Wilshire Blvd., 6th Floor
Los Angeles, CA 90025-6538
Telephone: (310) 445-0800
Facsimile: (310) 473-2525
mpress@selmanbreitman.com
lramos@selmanbreitman.com
rvansteenis@selmanbreitman.com

Attorneys for Plaintiff Unionamerica Insurance Company
Limited, successor-in-interest to St. Paul Reinsurance
Company Limited (erroneously referred to in the original
complaint as St. Paul Reinsurance Company Limited
London)

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| Unionamerica Insurance Company Limited, successor-in-interest to St. Paul Reinsurance Company Limited, <br><br> Plaintiff <br><br> v. <br><br> The Fort Miller Group, Inc., The Fort Miller Company, Inc. and Beeche Systems Corporation, <br><br> Defendants | CASE NO.   C 05 01912 BZ <br><br> **UNIONAMERICA'S OBJECTIONS TO EVIDENCE SUBMITTED IN SUPPORT OF DEFENDANTS' OPPOSITION TO MOTION FOR SUMMARY JUDGMENT** <br><br> Date:           December 17, 2008 <br> Time:          10:00 a.m. <br> Courtroom:  G, 15th Floor <br> Judge:         Hon. Bernard Zimmerman <br><br> Complaint Filed         : 05/09/2005 <br> 1st Am. Complaint Filed : 04/28/2008 |

TO ALL PARTIES AND THEIR RESPECTIVE ATTORNEYS OF RECORD:

PLEASE TAKE NOTICE that plaintiff, Unionamerica Insurance Company Limited, successor-in-interest to St. Paul Reinsurance Company, Ltd. London (hereinafter "Unionamerica"), hereby objects to the following evidence that defendant the Fort Miller Group, Inc., the Fort Miller Company, Inc., and Beeche Systems Corporation (hereinafter "defendants") have submitted in the Declaration of Ethan Miller and in the Separate Statement of Additional Undisputed Material Facts filed in opposition to plaintiff's motion for summary judgment.

## A.  **OBJECTIONS TO DECLARATION OF ETHAN A MILLER**

### 1.  **Paragraph 9, Ex. D**

Objectionable Language:  "On November 20, 2008, I conducted a search to locate archived web pages from the web address "http://www.usrisk.com" from January 1, 1996 to May 24, 2008, utilizing the search engine provided by the Internet Archive (http"//www.archive.org".)  Attached hereto as Exhibit D are true and correct copies of te results of that search."

Objection:     Lacks Foundation, no authentication, hearsay.

Argument:     The declarant cannot lay a foundation for Exhibit D which he claims to be copies of U.S. Risk's website from 1996-2008. The declarant was never an employee of U.S. Risk and has no personal knowledge of the contents of U.S. Risk's website, if any, from 1996-2008.  No representative of U.S. Risk has been asked to review Exhibit D much less has Exhibit D been authenticated.   The contents of Exhibit D also constitute inadmissible hearsay.

### 2.  **Paragraph 10**

Objectionable Language:       "The website pages retrieved from the Internet Archive demonstrate that as early as 2000, U.S. Risk had a fully interactive Internet website.  At the U.S. Risk website customers could receive a "Quick Quote" or click on a link that would forward an e-mail to U.S. Risk underwriters, or download insurance applications forms."

Objections:     Lacks foundation, no authentication, calls for speculation, hearsay.

Argument:     The declarant cannot lay a foundation for Exhibit D which he claims to be copies of U.S. Risk's website from 1996-2008. The declarant was never an employee or

Selman Breitman LLP
ATTORNEYS AT LAW

1  representative of U.S. Risk has no personal knowledge of the contents of U.S. Risk's website, if

2  any, from 1996-2008.  No representative of U.S. Risk has been asked to review Exhibit D much

3  less has Exhibit D been authenticated.   The contents of the documents also constitute inadmissible

4  hearsay.  The declarant uses the written out of court statements in Exhibit D to assert that U.S.

5  Risk had am "interactive website."  There is no applicable exception to the hearsay rule to allow

6  the contents of Exhibit D to be admissible.

**3.    Paragraph 22, Ex. P**

7

8      <u>Objectionable language:</u>      "Attached hereto as Exhibit P is a true and correct copy of

9  the expert witness report submitted in this action by William Hager, dated October 31, 2008."

10     <u>Objections:</u>    Submitted in violation of October 29, 2008 Order Staying Bad Faith

11                Discovery; cumulative, redundant, not relevant.

12     <u>Argument:</u>    On October 29, 2008, the court stayed all bad faith discovery including

13  expert witness discovery.   Exhibit P is the expert witness report for defendants' expert on bad

14  faith issues.  Defendants have already designated another expert, Donn McVeigh, to testify

15  regarding the underwriting of the policies at issue.  Defendants cannot have two experts on the

16  same subject matter.  To the extent that defendants claim that Mr. Hager has opined regarding the

17  underwriting of the policies, those opinions are cumulative to Mr. McVeigh's opinions and should

18  not be admitted. Unionamerica has concurrently filed a motion to strike Exhibit P in its entirety.

**4.    Paragraph 23, Ex. Q**

19

20     <u>Objectionable Language:</u>      "Attached hereto as Exhibit Q is a true and correct copy of

21  an e-mail dated May 18, 2001 from Betty Prah to Steve Bayliss, bearing the Bates label SPR UW

22  00521.  This document was produced by Ms. Prah's counsel during Ms. Prah's deposition, as part

23  of a series of documents purporting to be the general underwriting file for the Unionamerica CGL

24  Gap policy program, Bates rage SPR UW 0001-0920. "

25     <u>Objections:</u>    Lacks Foundation, no authentication, hearsay.

26     <u>Argument:</u>    Exhibit Q has never been reviewed by an employee of U.S. Risk, Betty

27  Prah, or Steve Bayliss, therefore there is no foundation to support the authentication of Exhibit Q.

28  In addition, the contents of Exhibit Q constitute inadmissible hearsay.  There is no exception to the

3

Selman Breitman LLP
ATTORNEYS AT LAW

415296.1  1090.23834

1  hearsay rule to allow the contents on this document to be admitted.

2  **5.    Paragraph 24, Exhibit R**

3      Objectionable Language:      Attached hereto as Exhibit R are true and correct copies of:

4  (1) what purports to be an e-mail dated Nov. 30 1999 from "Richard" to "Betty", bearing the Bates

5  number P00499; and (2) what purports to be an e-mail dated August 14, 2000 from Sandy" to

6  "Betty," bearing the Bates number P00480.  These documents were produced by Plaintiff

7  Unionamerica on February 20, 2008 without Bates labels (or confidentiality labels), and were

8  subsequently labeled upon receipt by counsel for defendants.  These documents also were included

9  in Exhibit 1 to the October 14, 2008 deposition of Richard Schwartz. "

10      Objections:    Lacks Foundation, no authentication

11      Argument:      Exhibit R has never been reviewed by an employee of U.S. Risk,  therefore

12  there is no foundation to support the authentication of Exhibit R.  In addition, the contents of

13  Exhibit R constitute inadmissible hearsay.  There is no exception to the hearsay rule to allow the

14  contents of this document to be admitted.

15  **6.    Paragraph 25, Ex. S**

16      Objectionable language:      Attached hereto as Exhibit S is a true and correct copy of a

17  "Second Report" dated May 28, 2004, from Richard Schwartz to Eddie Paul.  This documents was

18  proffered as Exhibit 10 to the October 14, 2008 deposition of Richard Schwartz."

19      Objections:    Lacks foundation, copy of exhibit not filed with declaration.

20      Argument:      Exhibit S was not filed with the declaration and therefore cannot be

21  considered in this motion.

22  **B.    OBJECTIONS TO DEFENDANTS' SEPARATE STATEMENT OF ADDITIONAL**

23  **UNDISPUTED FACTS**

24  **7.    Paragraph 187**

25      Objectionable language:      "The "QuikDeck" Beeche product ... was developed after

26  2002."

27      Objections:    Lacks foundation, assumes facts not in evidence, misstates testimony.

28      Argument:      The testimony cited in support of this statement makes no mention of when

4

OBJECTIONS TO EVIDENCE IN SUPPORT OF DEFENDANTS' OPPOSITION TO MOTION FOR
SUMMARY JUDGMENT- C 05 01912 BZ

Selman Breitman LLP
ATTORNEYS AT LAW

1   the quick deck was developed.

2   **8.      Paragraph 199**

3   <u>Objectionable Language:</u>      "Ms. Marshall forwarded brochures and other promotional

4   materials relating to the Fort Miller companies' products with the March 1999 application."

5   <u>Objections:</u>      Misstates testimony, incomplete statement.

6   <u>Argument:</u>      The Fort Miller Company and Beeche are different and separate companies.

7   There is no evidence that Ms. Marshall forwarded any promotional materials  regarding Beeche to

8   U.S. Risk.  The promotional materials attached to the March 1999 application in the U.S. Risk

9   underwriting file do not include any materials regarding Beeche.   *See*, Index of Exhibits

10  ("Index"), Exh. 33.

11  **9.      Paragraph 201**

12  <u>Objectionable Language:</u>      "However, unlike other underwriters, U.S. Risk asked very

13  few questions regarding the application."

14  <u>Objections:</u>      Lacks foundation, calls for speculation, inappropriate opinion testimony,

15  not relevant, misstates testimony.

16  <u>Argument:</u>      Ms. Marshall cannot testify regarding what "other underwriters" would or

17  would not do as she is not an underwriter, nor an expert in underwriting.  What other underwriters

18  may do is not material to what the U.S. Risk underwriters did. The standard on rescission for

19  underwriters is a subjective standard - what this underwriter did or would have done.  Opinions as

20  to what other underwriters may have done are not relevant to this subjective standard.  It misstates

21  testimony and is misleading.  U. S. Risk required a 9 page application  in addition to requested

22  attachments (*see*, Index Exh. 33) as compared to 4 page application required for the Beeche CGL

23  policy. *See*, Index,  Exhs.  68-69. As the US Risk application requested much more extensive

24  information, whether US Risk asked "few questions" as compared to, for instance, the CGL

25  underwriter is not probative or relevant.

26  **10.      Paragraph 202**

27  <u>Objectionable Language:</u>      "In a written response to the initial, unsigned application,

28  Ms. Hoffman asked for only two pieces of information regarding Fort Miller's products: (1) the

5

Selman Breitman LLP
ATTORNEYS AT LAW

OBJECTIONS TO EVIDENCE IN SUPPORT OF DEFENDANTS' OPPOSITION TO MOTION FOR
SUMMARY JUDGMENT- C 05 01912 BZ

1  average product "value"; and (2) the "largest value" of a Fort Miller product."

2      Objections:   Mistakes testimony, incomplete, misleading

3      Argument:   U.S. Risk application contains 9 pages of questions relating not only to the

4  value of the product but also to the overall nature of the risk and the insureds' products.   The

5  March 1999 application sent to U.S. Risk did not have answers to the "average value" and "largest

6  value" questions. *See*, Index , Exh. 33.  Because these answers were missing from the application,

7  U.S. Risk asked for the answers before it underwrote the risk. The fact that Ms. Hoffman asked for

8  these two pieces of information only evidences that these questions were material questions not

9  answered in the initial application.

10  **11.**    **Paragraph 206**

11      Objectionable language:     "U.S. Risk and its underwriters had Internet access in March

12  1999."

13      Objections:   Calls for speculation, lacks foundation, hearsay, not relevant, inappropriate

14  opinion, violates parole evidence rule.

15      Argument:   Ms. Marshall has no basis to state that Ms. Hoffman or Ms. Prah had

16  internet access in 1999 and she certainly cannot testify as to if all of U.S. Risk has internet access

17  in 1999. Ms. Marshall was never an employee of U.S. Risk.  Even if it were proper for

18  defendants' expert to opine on what was standard in the industry on 2001, he cannot testify as to

19  what U.S. Risk had in 2001, or at any time.  The only support for Ms. Marshall's testimony that

20  U.S. Risk  had internet access in 1999 is a purported telephone conversation Ms. Marshall

21  supposedly had with Sandy Hoffman. But, the statements Ms. Hoffman made during any

22  supposed telephone conversation constitute inadmissible hearsay.  In addition Ms. Hoffman has

23  been deceased for about four years. Index, Exhs. 63-64.

24      Ms. Marshall's testimony should be barred is it constitutes inadmissible hearsay. Fed. R.

25  Evid. 801(c).  Hearsay is an intended, oral statement made by the declarant out of court, offered

26  into evidence to proved the truth of the matter asserted in the statement. Fed. R. Evid. 801(a), (c).

27  Hearsay focuses on the truth of the matter contained within a statement to determine its

28  admissibility. Ms. Marshall's testimony is "an out of court statement offered in evidence to prove

Selman Breitman LLP
ATTORNEYS AT LAW

6

1   the truth of the matter asserted" and is ". . . inadmissible unless defined as non-hearsay . . . or falls

2   within a hearsay exception." *Orr v. Bank of Am., NT & SA,* 285 F.3d 764, 778 (9th Cir. 2002);

3   *Sarno v. Douglas Elliman-Gibbons & Ives, Inc.*, 183 F.3d 155, 160 (2d Cir.1999) ("Sarno's

4   statement as to what he 'was told' was hearsay that would not be admissible at a trial".)   As well,

5   courts generally hold that "inadmissible hearsay evidence may not be considered on a motion for

6   summary judgment." *Anheuser-Busch, Inc. v. Natural Beverage Distributors*, 69 F.3d 337, 345 n.

7   4 (9th Cir. 1995). Thus, there is adequate grounds for this Court to exclude Ms. Marshall's

8   testimony. First, the entire telephone conversation is hearsay.

9           The credibility of this testimony strains all reason.  First, during her deposition, Ms.

10  Marshall stated some twenty-eight times she could not recall or did not know the answer to certain

11  questions asked by Unionamerica's counsel. *See*, Index Exh. 67.  Yet, when questioned by counsel

12  for defendants she clearly recalled the contents of a very short conversation she had with Ms.

13  Hoffman almost ten years ago that would not only help defendants but help Ms. Marshall

14  personally and help her current employer, Associates of Glens Falls.  Ms. Marshall was

15  defendants' broker in charge of obtaining the GAP policies and filled out the applications so any

16  error in the applications was hers.  Furthermore, Associates of Glens Falls faces errors and

17  omissions liability for failing to supply a complete application which resulted in the rescission of

18  the policy.  *See, Century Surety Co. v. Crosby Insurance, Inc.,* 124 Cal. App.4th 116, 124 (noting

19  that a broker can be held liable to an insurer in tort where it reasonably should have known

20  disclosure of the truth would have resulted in the insurer rejecting the insured's application).

21          Besides initially never being asked by Mr. Miller about websites, Ms. Marshall undercuts

22  the value of her testimony by stating that she "did not follow up" on the conversation, believing

23  Ms. Hoffman "took [her] conversation at face value and continued on." Index Exh., 67.  Thus,

24  defendants cannot even show that the underwriter relied on this information as part of the

25  underwriting  process.  Ms. Marshall further erodes the confidence in this telephone call by

26  admitting that there is no documentation either in her file or the underwriter's regarding this

27  conversation. *Id.* This Court just recently declined to admit such uncorroborated oral testimony in

28  the case of *Memry Corp. v. Kentucky Oil Technology, N.V., et al.,* 2007 U.S. Dist. LEXIS 89645

7

OBJECTIONS TO EVIDENCE IN SUPPORT OF DEFENDANTS' OPPOSITION TO MOTION FOR
SUMMARY JUDGMENT- C 05 01912 BZ

Selman Breitman LLP
ATTORNEYS AT LAW

1   (N.D. Cal. 2007) *1.  In *Memry*, the court granted a motion to exclude testimony regarding an

2   alleged claim of inventorship based on oral testimony. *Memry Corp., supra,* at *8. The Court

3   disallowed any reliance on such oral testimony because there is a "requirement that oral testimony

4   by interested witnesses be corroborated by documentary evidence." *Id.*, quoting *Lacks Indus., Inc.*

5   *v. McKechnie Vehicle Components USA, Inc.*, 322 F.3d 1335, 1350 (Fed. Cir. 2003).Where no

6   such documentary evidence is provided, uncorroborated oral testimony cannot be relied upon. *Id.*

7   at *9.  Again Ms. Marshall is an interested witness as the rescission of the policy based on the

8   misrepresentations an omission she made on defendants' behalf in the application creates potential

9   liability for herself and her current employer.

10       Both state and federal courts have long been skeptical of the value of uncorroborated, oral

11   testimony regarding conversations with witnesses which are deceased.  Such evidence is

12   inherently weak:

13           "Oral evidence, of which there is no satisfactory independent
             corroboration, is the weakest kind of evidence known to the law."
14

15   *Herbert v. Lankershim,* (1937) 9 Cal. 2d 409, 472; *see also, Lombardi v. Tranchina,* (1954) 129

16   Cal. App. 2d 778, 780 ("[testimony] concerning oral declarations alleged to have been made by a

17   decedent against interest, unless corroborated by satisfactory evidence, is the weakest of testimony

18   that can be produced."); *Easton v. Brant*, 19 F.2d 857, 860 (9th Cir. 1927) (". . . testimony as to

19   the oral statements of deceased persons, which is therefore regarded as the weakest kind of

20   evidence and subjected to the closest scrutiny.") As such, this type of evidence is subject to the

21   court's closest scrutiny. *Easton, supra,* 19 F.2d at 860.  Moreover, at the time of Ms. Marshall's

22   deposition, Ms. Hoffman was deceased, (See, Index Exhs. 63-64)  "and courts of justice lend a

23   very unwilling ear to statements of what dead men had said." *William P. Lea v. Polk County*

24   *Copper Co.*, et al., (1859) 62 U.S. 493, 504. Thus, even if Ms. Marshall's testimony is somehow

25   admissible, its probative value is non-existent.

26       Reliance on Ms. Marshall's oral statement also violates the parole evidence rule. Her oral

27   assertion is offered to alter the integrated written policy.  The applications and their attachments

28   became part of the insurance policy.  No oral statement may alter what representations were made

8

415296.1  1090.23834

**Selman Breitman LLP**
ATTORNEYS AT LAW

Selman Breitman LLP
ATTORNEYS AT LAW

1    on the application. (*See,* Reply Brief)

2         Exhibit D upon which defendants also rely is an alleged copy of the contents of the U.S.

3    Risk website in 2000 and 2001.  Exhibit D lacks foundation and contains heresy as it has never

4    been authenticated.  Even if it were not heresy and unauthenticated, the first page of Exhibit D

5    shows that in 1999 U.S. Risk has no web pages at all.   Exhibit Q is an unauthenticated document

6    with the purported date of 2001, which does not support defendants' assertion that U.S. Risk had

7    internet access in 1999.  In addition whether U.S. Risk had web access in 1999, (which Betty Prah

8    testified she did not have ) is not relevant to whether defendants made material misrepresentations

9    on their applications.  U.S. Risk had no duty to investigate the responses and attachments

10    defendants put on their applications.

11    **12.     Paragraph 207**

12         <u>Objectionable language:</u>        "In March or April of 1999, Ms. Hoffman reviewed the Fort

13    Miller Group's website."

14         <u>Objections:</u>       Hearsay, assumes facts not in evidence, calls for speculation, not relevant,

15    violates parole evidence rule.

16         <u>Argument:</u>       Ms. Marshall has no basis to state that Ms. Hoffman or Ms. Prah had

17    internet access in 1999 and she certainly cannot testify as to if all of U.S. Risk has internet access

18    in 1999. Ms. Marshall was never an employee of U.S. Risk.  Even if it were proper for

19    defendants' expert to opine on what was standard in the industry on 2001, he cannot testify as to

20    what U.S. Risk had in 2001, or at any time.  The only support for Ms. Marshall's testimony that

21    U.S. Risk  had internet access in 1999 is a purported telephone conversation Ms. Marshall

22    supposedly had with Sandy Hoffman.  But, the statements Ms. Hoffman made during any

23    supposed telephone conversation constitute inadmissible hearsay.  In addition Ms. Hoffman has

24    been deceased for about four years. Index, Exhs. 63-64.

25         Ms. Marshall's testimony should be barred is it constitutes inadmissible hearsay. Fed. R.

26    Evid. 801(c).  Hearsay is an intended, oral statement made by the declarant out of court, offered

27    into evidence to proved the truth of the matter asserted in the statement. Fed. R. Evid. 801(a), (c).

28    Hearsay focuses on the truth of the matter contained within a statement to determine its

9

1   admissibility.  Ms. Marshall's testimony is "an out of court statement offered in evidence to prove

2   the truth of the matter asserted" and is ". . . inadmissible unless defined as non-hearsay . . . or falls

3   within a hearsay exception." *Orr v. Bank of Am., NT & SA,* 285 F.3d 764, 778 (9th Cir. 2002);

4   *Sarno v. Douglas Elliman-Gibbons & Ives, Inc.,* 183 F.3d 155, 160 (2d Cir.1999) ("Sarno's

5   statement as to what he 'was told' was hearsay that would not be admissible at a trial".)     As well,

6   courts generally hold that "inadmissible hearsay evidence may not be considered on a motion for

7   summary judgment." *Anheuser-Busch, Inc. v. Natural Beverage Distributors,* 69 F.3d 337, 345 n.

8   4 (9th Cir. 1995).  Thus, there is adequate grounds for this Court to exclude Ms. Marshall's

9   testimony. First, the entire telephone conversation is hearsay.

10         The credibility of this testimony strains all reason.  First, during her deposition, Ms.

11   Marshall stated some twenty-eight times she could not recall or did not know the answer to certain

12   questions asked by Unionamerica's counsel. *See,* Index Exh. 67.  Yet, when questioned by counsel

13   for defendants she clearly recalled the contents of a very short conversation she had with Ms.

14   Hoffman almost ten years ago that would not only help defendants but help Ms. Marshall

15   personally and help her current employer, Associates of Glens Falls.  Ms. Marshall was

16   defendants' broker in charge of obtaining the GAP policies and filled out the applications so any

17   error in the applications was hers.  Furthermore, Associates of Glens Falls faces errors and

18   omissions liability for failing to supply a complete application which resulted in the rescission of

19   the policy. *See, Century Surety Co. v. Crosby Insurance, Inc.,* 124 Cal. App.4th 116, 124 (noting

20   that a broker can be held liable to an insurer in tort where it reasonably should have known

21   disclosure of the truth would have resulted in the insurer rejecting the insured's application).

22         Besides initially never being asked by Mr. Miller about websites, Ms. Marshall undercuts

23   the value of her testimony by stating that she "did not follow up" on the conversation, believing

24   Ms. Hoffman "took [her] conversation at face value and continued on." Index Exh., 67.  Thus,

25   defendants cannot even show that the underwriter relied on this information as part of the

26   underwriting process.  Ms. Marshall further erodes the confidence in this telephone call by

27   admitting that there is no documentation either in her file or the underwriter's regarding this

28   conversation. *Id.* This Court just recently declined to admit such uncorroborated oral testimony in

10

Selman Breitman LLP
ATTORNEYS AT LAW

415296.1  1090.23834

1   the case of *Memry Corp. v. Kentucky Oil Technology, N.V., et al.,* 2007 U.S. Dist. LEXIS 89645

2   (N.D. Cal. 2007) *1.  In *Memry*, the court granted a motion to exclude testimony regarding an

3   alleged claim of inventorship based on oral testimony. *Memry Corp., supra,* at *8. The Court

4   disallowed any reliance on such oral testimony because there is a "requirement that oral testimony

5   by interested witnesses be corroborated by documentary evidence." *Id.*, quoting *Lacks Indus., Inc.*

6   *v. McKechnie Vehicle Components USA, Inc.,* 322 F.3d 1335, 1350 (Fed. Cir. 2003).Where no

7   such documentary evidence is provided, uncorroborated oral testimony cannot be relied upon. *Id.*

8   at *9.  Again Ms. Marshall is an interested witness as the rescission of the policy based on the

9   misrepresentations an omission she made on defendants' behalf in the application creates potential

10  liability for herself and her current employer.

11      Both state and federal courts have long been skeptical of the value of uncorroborated, oral

12  testimony regarding conversations with witnesses which are deceased.  Such evidence is

13  inherently weak:

14          "Oral evidence, of which there is no satisfactory independent
            corroboration, is the weakest kind of evidence known to the law."
15

16  *Herbert v. Lankershim,* (1937) 9 Cal. 2d 409, 472; *see also, Lombardi v. Tranchina,* (1954) 129

17  Cal. App. 2d 778, 780 ("[testimony] concerning oral declarations alleged to have been made by a

18  decedent against interest, unless corroborated by satisfactory evidence, is the weakest of testimony

19  that can be produced."); *Easton v. Brant,* 19 F.2d 857, 860 (9th Cir. 1927) (". . . testimony as to

20  the oral statements of deceased persons, which is therefore regarded as the weakest kind of

21  evidence and subjected to the closest scrutiny.") As such, this type of evidence is subject to the

22  court's closest scrutiny. *Easton, supra,* 19 F.2d at 860.  Moreover, at the time of Ms. Marshall's

23  deposition, Ms. Hoffman was deceased, (See, Index Exhs. 63-64) "and courts of justice lend a

24  very unwilling ear to statements of what dead men had said." *William P. Lea v. Polk County*

25  *Copper Co.,* et al., (1859) 62 U.S. 493, 504. Thus, even if Ms. Marshall's testimony is somehow

26  admissible, its probative value is non-existent.

27      Reliance on Ms. Marsahll's oral statement also violates the parole evidence rule. Her oral

28  assertion is offered to alter the integrated written policy.  The applications and their attachments

11

415296.1 1090.23834

Selman Breitman LLP
ATTORNEYS AT LAW

1    became part of the insurance policy.  No oral statement may alter what representations were made

2    on the application. (*See,* Reply Brief)

3           Exhibit D upon which defendants also rely is an alleged copy of the contents of the U.S.

4    Risk website in 2000 and 2001.  Exhibit D lacks foundation and contains heresy as it has never

5    been authenticated.  Even if it were not heresy and unauthenticated, the first page of Exhibit D

6    shows that in 1999 U.S. Risk has no web pages at all.   Exhibit Q is an unauthenticated document

7    with the purported date of 2001, which does not support defendants' assertion that U.S. Risk had

8    internet access in 1999.  In addition whether U.S. Risk had web access in 1999, (which Betty Prah

9    testified she did not have ) is not relevant to whether defendants made material misrepresentations

10   on their applications.  U.S. Risk had no duty to investigate the responses and attachments

11   defendants put on their applications.

**13.    Paragraph 208**

13          <u>Objectionable language:</u>       "While she was reviewing the Fort Miller Group website in

14   March or April of 1999, Ms. Hoffman called Ms. Marshall and told her that she, Ms. Hoffman,

15   could not find certain information."

16          <u>Objections:</u>     Hearsay, assumes facts not in evidence, calls for speculation, not relevant,

17   violated parole evidence rule.

18          <u>Argument:</u>      Ms. Marshall has no basis to state that Ms. Hoffman or Ms. Prah had

19   internet access in 1999 and she certainly cannot testify as to if all of U.S. Risk has internet access

20   in 1999.  Ms. Marshall was never an employee of U.S. Risk.  Even if it were proper for

21   defendants' expert to opine on what was standard in the industry on 2001, he cannot testify as to

22   what U.S. Risk had in 2001, or at any time.  The only support for Ms. Marshall's testimony that

23   U.S. Risk  had internet access in 1999 is a purported telephone conversation Ms. Marshall

24   supposedly had with Sandy Hoffman.  But, the statements Ms. Hoffman made during any

25   supposed telephone conversation constitute inadmissible hearsay.  In addition Ms. Hoffman has

26   been deceased for about four years. Index, Exhs. 63-64.

27          Ms. Marshall's testimony should be barred is it constitutes inadmissible hearsay. Fed. R.

28   Evid. 801(c).  Hearsay is an intended, oral statement made by the declarant out of court, offered

Selman Breitman LLP
ATTORNEYS AT LAW

OBJECTIONS TO EVIDENCE IN SUPPORT OF DEFENDANTS' OPPOSITION TO MOTION FOR
SUMMARY JUDGMENT- C 05 01912 BZ

Selman Breitman LLP
ATTORNEYS AT LAW

1  into evidence to proved the truth of the matter asserted in the statement. Fed. R. Evid. 801(a), (c).

2  Hearsay focuses on the truth of the matter contained within a statement to determine its

3  admissibility.  Ms. Marshall's testimony is "an out of court statement offered in evidence to prove

4  the truth of the matter asserted" and is ". . . inadmissible unless defined as non-hearsay . . . or falls

5  within a hearsay exception." *Orr v. Bank of Am., NT & SA,* 285 F.3d 764, 778 (9th Cir. 2002);

6  *Sarno v. Douglas Elliman-Gibbons & Ives, Inc.*, 183 F.3d 155, 160 (2d Cir.1999) ("Sarno's

7  statement as to what he 'was told' was hearsay that would not be admissible at a trial".)     As well,

8  courts generally hold that "inadmissible hearsay evidence may not be considered on a motion for

9  summary judgment." *Anheuser-Busch, Inc. v. Natural Beverage Distributors*, 69 F.3d 337, 345 n.

10  4 (9th Cir. 1995). Thus, there is adequate grounds for this Court to exclude Ms. Marshall's

11  testimony. First, the entire telephone conversation is hearsay.

12      The credibility of this testimony strains all reason.  First, during her deposition, Ms.

13  Marshall stated some twenty-eight times she could not recall or did not know the answer to certain

14  questions asked by Unionamerica's counsel. *See*, Index Exh. 67.  Yet, when questioned by counsel

15  for defendants she clearly recalled the contents of a very short conversation she had with Ms.

16  Hoffman almost ten years ago that would not only help defendants but help Ms. Marshall

17  personally and help her current employer, Associates of Glens Falls.  Ms. Marshall was

18  defendants' broker in charge of obtaining the GAP policies and filled out the applications so any

19  error in the applications was hers.  Furthermore, Associates of Glens Falls faces errors and

20  omissions liability for failing to supply a complete application which resulted in the rescission of

21  the policy. *See, Century Surety Co. v. Crosby Insurance, Inc.,* 124 Cal. App.4th 116, 124 (noting

22  that a broker can be held liable to an insurer in tort where it reasonably should have known

23  disclosure of the truth would have resulted in the insurer rejecting the insured's application).

24      Besides initially never being asked by Mr. Miller about websites, Ms. Marshall undercuts

25  the value of her testimony by stating that she "did not follow up" on the conversation, believing

26  Ms. Hoffman "took [her] conversation at face value and continued on." Index Exh., 67.  Thus,

27  defendants cannot even show that the underwriter relied on this information as part of the

28  underwriting process. Ms. Marshall further erodes the confidence in this telephone call by

13

OBJECTIONS TO EVIDENCE IN SUPPORT OF DEFENDANTS' OPPOSITION TO MOTION FOR
SUMMARY JUDGMENT- C 05 01912 BZ

admitting that there is no documentation either in her file or the underwriter's regarding this conversation. *Id.* This Court just recently declined to admit such uncorroborated oral testimony in the case of *Memry Corp. v. Kentucky Oil Technology, N.V., et al.,* 2007 U.S. Dist. LEXIS 89645 (N.D. Cal. 2007) *1.  In *Memry*, the court granted a motion to exclude testimony regarding an alleged claim of inventorship based on oral testimony. *Memry Corp., supra,* at *8. The Court disallowed any reliance on such oral testimony because there is a "requirement that oral testimony by interested witnesses be corroborated by documentary evidence." *Id.*, quoting *Lacks Indus., Inc. v. McKechnie Vehicle Components USA, Inc.*, 322 F.3d 1335, 1350 (Fed. Cir. 2003).Where no such documentary evidence is provided, uncorroborated oral testimony cannot be relied upon. *Id.* at *9.  Again Ms. Marshall is an interested witness as the rescission of the policy based on the misrepresentations an omission she made on defendants' behalf in the application creates potential liability for herself and her current employer.

Both state and federal courts have long been skeptical of the value of uncorroborated, oral testimony regarding conversations with witnesses which are deceased.  Such evidence is inherently weak:

> "Oral evidence, of which there is no satisfactory independent corroboration, is the weakest kind of evidence known to the law."

*Herbert v. Lankershim*, (1937) 9 Cal. 2d 409, 472; *see also, Lombardi v. Tranchina*, (1954) 129 Cal. App. 2d 778, 780 ("[testimony] concerning oral declarations alleged to have been made by a decedent against interest, unless corroborated by satisfactory evidence, is the weakest of testimony that can be produced."); *Easton v. Brant*, 19 F.2d 857, 860 (9th Cir. 1927) (". . . testimony as to the oral statements of deceased persons, which is therefore regarded as the weakest kind of evidence and subjected to the closest scrutiny.") As such, this type of evidence is subject to the court's closest scrutiny. *Easton, supra,* 19 F.2d at 860.  Moreover, at the time of Ms. Marshall's deposition, Ms. Hoffman was deceased, (See, Index Exhs. 63-64)  "and courts of justice lend a very unwilling ear to statements of what dead men had said." *William P. Lea v. Polk County Copper Co.*, et al., (1859) 62 U.S. 493, 504. Thus, even if Ms. Marshall's testimony is somehow admissible, its probative value is non-existent.

OBJECTIONS TO EVIDENCE IN SUPPORT OF DEFENDANTS' OPPOSITION TO MOTION FOR SUMMARY JUDGMENT- C 05 01912 BZ

Selman Breitman LLP
ATTORNEYS AT LAW

415296.1 1090.23834

1   Reliance on Ms. Marsahll's oral statement also violates the parole evidence rule. Her oral

2   assertion is offered to alter the integrated written policy. The applications and their attachments

3   became part of the insurance policy. No oral statement may alter what representations were made

4   on the application. (*See,* Reply Brief)

5   Exhibit D upon which defendants also rely is an alleged copy of the contents of the U.S.

6   Risk website in 2000 and 2001. Exhibit D lacks foundation and contains heresy as it has never

7   been authenticated. Even if it were not heresy and unauthenticated, the first page of Exhibit D

8   shows that in 1999 U.S. Risk has no web pages at all. Exhibit Q is an unauthenticated document

9   with the purported date of 2001, which does not support defendants' assertion that U.S. Risk had

10  internet access in 1999. In addition whether U.S. Risk had web access in 1999, (which Betty Prah

11  testified she did not have ) is not relevant to whether defendants made material misrepresentations

12  on their applications. U.S. Risk had no duty to investigate the responses and attachments

13  defendants put on their applications.

14  **14.   Paragraph 209**

15  <u>Objectionable language:</u>      "During this phone call, Ms. Marshall told Ms. Hoffman that

16  each Fort Miller entity had its own website, and that these websites could be accessed from the

17  main website that Ms. Marshall was looking at."

18  <u>Objections:</u>   Hearsay, assumes facts not in evidence, calls for speculation, not relevant,

19  violates parole evidence rule.

20  <u>Argument:</u>      Ms. Marshall has no basis to state that Ms. Hoffman or Ms. Prah had

21  internet access in 1999 and she certainly cannot testify as to if all of U.S. Risk has internet access

22  in 1999. Ms. Marshall was never an employee of U.S. Risk. Even if it were proper for

23  defendants' expert to opine on what was standard in the industry on 2001, he cannot testify as to

24  what U.S. Risk had in 2001, or at any time. The only support for Ms. Marshall's testimony that

25  U.S. Risk  had internet access in 1999 is a purported telephone conversation Ms. Marshall

26  supposedly had with Sandy Hoffman. But, the statements Ms. Hoffman made during any

27  supposed telephone conversation constitute inadmissible hearsay. In addition Ms. Hoffman has

28  been deceased for about four years. Index, Exhs. 63-64.

Selman Breitman LLP
ATTORNEYS AT LAW

15

415296.1 1090.23834

1   Ms. Marshall's testimony should be barred is it constitutes inadmissible hearsay. Fed. R.

2   Evid. 801(c).  Hearsay is an intended, oral statement made by the declarant out of court, offered

3   into evidence to proved the truth of the matter asserted in the statement. Fed. R. Evid. 801(a), (c).

4   Hearsay focuses on the truth of the matter contained within a statement to determine its

5   admissibility.  Ms. Marshall's testimony is "an out of court statement offered in evidence to prove

6   the truth of the matter asserted" and is ". . . inadmissible unless defined as non-hearsay . . . or falls

7   within a hearsay exception." *Orr v. Bank of Am., NT & SA*, 285 F.3d 764, 778 (9th Cir. 2002);

8   *Sarno v. Douglas Elliman-Gibbons & Ives, Inc.*, 183 F.3d 155, 160 (2d Cir.1999) ("Sarno's

9   statement as to what he 'was told' was hearsay that would not be admissible at a trial".)    As well,

10  courts generally hold that "inadmissible hearsay evidence may not be considered on a motion for

11  summary judgment." *Anheuser-Busch, Inc. v. Natural Beverage Distributors*, 69 F.3d 337, 345 n.

12  4 (9th Cir. 1995). Thus, there is adequate grounds for this Court to exclude Ms. Marshall's

13  testimony. First, the entire telephone conversation is hearsay.

14      The credibility of this testimony strains all reason.  First, during her deposition, Ms.

15  Marshall stated some twenty-eight times she could not recall or did not know the answer to certain

16  questions asked by Unionamerica's counsel. *See*, Index Exh. 67. Yet, when questioned by counsel

17  for defendants she clearly recalled the contents of a very short conversation she had with Ms.

18  Hoffman almost ten years ago that would not only help defendants but help Ms. Marshall

19  personally and help her current employer, Associates of Glens Falls.  Ms. Marshall was

20  defendants' broker in charge of  obtaining the GAP policies and filled out the applications so any

21  error in the applications was hers.  Furthermore, Associates of Glens Falls faces errors and

22  omissions liability for failing to supply a complete application which resulted in the rescission of

23  the policy. *See, Century Surety Co. v. Crosby Insurance, Inc.*, 124 Cal. App.4th 116, 124 (noting

24  that a broker can be held liable to an insurer in tort where it reasonably should have known

25  disclosure of the truth would have resulted in the insurer rejecting the insured's application).

26      Besides initially never being asked by Mr. Miller about websites, Ms. Marshall undercuts

27  the value of her testimony by stating that she "did not follow up" on the conversation, believing

28  Ms. Hoffman "took [her] conversation at face value and continued on." Index Exh., 67.  Thus,

16

Selman Breitman LLP
ATTORNEYS AT LAW

415296.1 1090.23834

1    defendants cannot even show that the underwriter relied on this information as part of the

2    underwriting process. Ms. Marshall further erodes the confidence in this telephone call by

3    admitting that there is no documentation either in her file or the underwriter's regarding this

4    conversation. *Id.* This Court just recently declined to admit such uncorroborated oral testimony in

5    the case of *Memry Corp. v. Kentucky Oil Technology, N.V., et al.,* 2007 U.S. Dist. LEXIS 89645

6    (N.D. Cal. 2007) *1.  In *Memry,* the court granted a motion to exclude testimony regarding an

7    alleged claim of inventorship based on oral testimony. *Memry Corp., supra,* at *8. The Court

8    disallowed any reliance on such oral testimony because there is a "requirement that oral testimony

9    by interested witnesses be corroborated by documentary evidence." *Id.,* quoting *Lacks Indus., Inc.*

10   *v. McKechnie Vehicle Components USA, Inc.,* 322 F.3d 1335, 1350 (Fed. Cir. 2003).Where no

11   such documentary evidence is provided, uncorroborated oral testimony cannot be relied upon. *Id.*

12   at *9. Again Ms. Marshall is an interested witness as the rescission of the policy based on the

13   misrepresentations an omission she made on defendants' behalf in the application creates potential

14   liability for herself and her current employer.

15          Both state and federal courts have long been skeptical of the value of uncorroborated, oral

16   testimony regarding conversations with witnesses which are deceased.  Such evidence is

17   inherently weak:

18          "Oral evidence, of which there is no satisfactory independent
19          corroboration, is the weakest kind of evidence known to the law."

20   *Herbert v. Lankershim,* (1937) 9 Cal. 2d 409, 472; *see also, Lombardi v. Tranchina,* (1954) 129

21   Cal. App. 2d 778, 780 ("[testimony] concerning oral declarations alleged to have been made by a

22   decedent against interest, unless corroborated by satisfactory evidence, is the weakest of testimony

23   that can be produced."); *Easton v. Brant,* 19 F.2d 857, 860 (9th Cir. 1927) (". . . testimony as to

24   the oral statements of deceased persons, which is therefore regarded as the weakest kind of

25   evidence and subjected to the closest scrutiny.") As such, this type of evidence is subject to the

26   court's closest scrutiny. *Easton, supra,* 19 F.2d at 860.  Moreover, at the time of Ms. Marshall's

27   deposition, Ms. Hoffman was deceased, (See, Index Exhs. 63-64)  "and courts of justice lend a

28   very unwilling ear to statements of what dead men had said." *William P. Lea v. Polk County*

Selman Breitman LLP
ATTORNEYS AT LAW

17

OBJECTIONS TO EVIDENCE IN SUPPORT OF DEFENDANTS' OPPOSITION TO MOTION FOR
SUMMARY JUDGMENT- C 05 01912 BZ

1    *Copper Co.*, et al., (1859) 62 U.S. 493, 504. Thus, even if Ms. Marshall's testimony is somehow

2    admissible, its probative value is non-existent.

3          Reliance on Ms. Marsahll's oral statement also violates the parole evidence rule. Her oral

4    assertion is offered to alter the integrated written policy.  The applications and their attachments

5    became part of the insurance policy.  No oral statement may alter what representations were made

6    on the application. (*See,* Reply Brief)

7          Exhibit D upon which defendants also rely is an alleged copy of the contents of the U.S.

8    Risk website in 2000 and 2001.  Exhibit D lacks foundation and contains heresy as it has never

9    been authenticated.  Even if it were not heresy and unauthenticated, the first page of Exhibit D

10   shows that in 1999 U.S. Risk has no web pages at all.   Exhibit Q is an unauthenticated document

11   with the purported date of 2001, which does not support defendants' assertion that U.S. Risk had

12   internet access in 1999.  In addition whether U.S. Risk had web access in 1999, (which Betty Prah

13   testified she did not have ) is not relevant to whether defendants made material misrepresentations

14   on their applications.  U.S. Risk had no duty to investigate the responses and attachments

15   defendants put on their applications.

**15.    Paragraph 223**

17          Objectionable language: "…(including the representation on the executed 1999 application

18   that Beeche designed and engineered "engineered access" systems)."

19          Objections:     Inappropriate argument by counsel.

20          Augment:     Defense counsel argument is not evidence.  Unionamerica has also moved

21   to strike this statement.

**16.    Paragraph 240**

23          Objectionable language:       "In 2001 Unionamerica/St. Paul had no understanding of

24   what the term "access platform" meant, and undertook no investigation to determine what it

25   meant."

26          Objections:     Misstates testimony, not material, misleading.

27          Argument:     Ms. Prah's testified that she understood an "access platforms" to be concrete

28   handicap ramps.  See, Defendants' Additional Fact 236. U.S. Risk had no duty to investigate

18

OBJECTIONS TO EVIDENCE IN SUPPORT OF DEFENDANTS' OPPOSITION TO MOTION FOR
SUMMARY JUDGMENT- C 05 01912 BZ

Selman Breitman LLP
ATTORNEYS AT LAW

1   answers which defendants put on their application.

2   **17.   Paragraph 241**

3      Objectionable language:      "Ms. Prah did not conduct any investigation at all into the

4   nature or details of any of Fort Miller's products."

5      Objections:   Misstates testimony, misleading.

6      Argument:   Defendants' assertion that Ms. Prah did not conduct an investigation into the

7   nature of the Ft. Miller's products is directly contradicted by her testimony that she reviewed

8   applications from previous years which Ft. Miller stated included all of the promotional materials

9   for all its products. See, Defendants Additional Facts 222-224. U.S. Risk had no duty to

10   investigate the responses defendants put on their applications.

11   **18.   Paragraph  242**

12      Objectionable language:      "Ms. Prah did not care what an access platform was, or what

13   any of the Fort Miller's products might be, because "it didn't change the value any."

14      Objection:   Misstates testimony, incomplete, misleading.

15      Argument:   Defendants assertion that Ms. Prah did not "care" what an access platform

16   was is directly contradicted by her testimony that if she had known that the access platforms were

17   huge metal, mobile scaffolding on bridges and buildings which move workers up, down, and

18   horizontally, she would have had to obtain express authorization from the insurance company in

19   London to accept the risk and her testimony that "mobile equipment" required at the very least a

20   higher premium.

21   **19.   Paragraph 250**

22      Objectionable language:      However, in 2001 it was standard practice for an underwriter

23   to use the Internet to investigate the business of a prospective commercial insured, and Ms. Prah

24   had e-mail no later than May, 2001.

25      Objection:   Lacks foundation, calls for speculation, not relevant

26      Argument:   U.S. Risk had no duty to investigate the veracity of the defendants'

27   responses on the application and whether it had access to the internet would not alter this fact.

28   U.S. Risk was not on notice that the Ft. Miller application was incomplete in any way and so did

19

OBJECTIONS TO EVIDENCE IN SUPPORT OF DEFENDANTS' OPPOSITION TO MOTION FOR
SUMMARY JUDGMENT- C 05 01912 BZ

Selman Breitman LLP
ATTORNEYS AT LAW

1   not have to search the internet for information even if it did have internet access.  In addition what

2   was standard in the industry does not prove that Ms. Prah had in internet access in 2001.

3   **20.    Paragraph 255**

4        Objectionable language:        Ms. Prah did not talk to anyone about the Fort Miller risk

5   prior to binding the 2001 renewal, despite the fact that U.S. Risk had a policy that all risks would

6   be reviewed by at least two U.S. Risk underwriters, including risks with respect to the CGL Gap

7   program.

8        Objections:    Not relevant

9        Argument:        U.S. Risk had no duty to investigate the veracity of the defendants'

10  responses on the applications.

11  **21.    Paragraph 261**

12       Objectionable language: "... Unionamerica's Rule 30(b)(6) witness, Timothy Open, cannot

13  identify any specific information that let it to conclude that Beeche "manufactured" the traveler

14  system.

15       Objections:    Misleading, misstates testimony, not relevant.

16       Argument:        It is not relevant that Mr. Open could not recall the documents which show

17  Beeche manufactured the access platform systems.   Defendants' own documents show that

18  Beeche advertised itself as the exclusive designer and manufacturer of access platform systems.

19  Counsel chose not to show Mr. Open documents in the claim file including Beeche brochures

20  which formed the basis for the rescission action.

21  **22.    Paragraph 263**

22       Objectionable language:        "...As designed, such searches would only return results that

23  refer to concrete."

24       Objections:    Inappropriate testimony and argument from counsel, improper conclusion,

25  improper opinion, lacks foundation.

26       Argument:    Counsel's opinion and conclusion of what a search "would" return is not

27  admissible evidence.  Unionamerica has concurrently filed a Motion to Strike this sentence.

28  **23.    Paragraph 265**

Selman Breitman LLP
ATTORNEYS AT LAW

OBJECTIONS TO EVIDENCE IN SUPPORT OF DEFENDANTS' OPPOSITION TO MOTION FOR
SUMMARY JUDGMENT- C 05 01912 BZ

1    Objectionable language:    "…Douglas Shureen, who was engaged by Unionamerica to

2  adjust the underlying claims against Fort Miller, …"

3    Objections:    Assumes facts not in evidence, misstates testimony.

4    Argument:    The cited evidence does not support the statement that Mr. Shureen was

5  "engaged to adjust the underlying claims against Fort Miller." In fact Mr. Shureen testified that he

6  was engaged to provide coverage analysis for the GAP policies.

7  **24.    Paragraph 271**

8    Objectionable language:    "In 2004, after meeting with Ms. Prah, Mr. Shureen had no

9  idea what an access platform was, or any idea how the words "access platform" were used in the

10  application responses. *(Yet he still recommended this rescission action.)*"

11    Objections:    Assumes facts not in evidence, misstates testimony, not relevant,

12  misleading, inappropriate argument by counsel.

13    Argument:    The testimony cited states that at his November 20, 2008 deposition Mr.

14  Shureen did not recall how the term "access platforms" were used if at all on the applications, not

15  that he did not know in 2004 during his coverage analysis.  The applications speak for themselves.

16  Defense counsel chose not to show the applications to Mr. Shureen.   Defense counsel's

17  parenthetical argument is not evidence. Unionamerica has concurrently filed a motion to strike the

18  parenthetical in its entirety. The evidence cited does not support the contention that Mr. Shureen

19  recommended this rescission action.  Who recommended the rescission action is not relevant to if

20  there is a reasonable basis to support rescission.

21  **25.    Paragraph 272**

22    Objectionable language:    "Despite meeting with Ms. Prah, Mr. Shureen testified that

23  did not know whether Unionamerica considered the signed 1999 application, which expressly

24  disclosed "engineered access," *(Yet he still recommended this rescission action.)*"

25    Objections:    Assumes facts not in evidence, misstates testimony, not relevant,

26  inappropriate argument by counsel.

27    Argument:    The testimony cited states that at his November 20, 2008 deposition Mr.

28  Shureen did not recall what U.S. Risk told him in 2004 about reviewing the term "engineered

21

OBJECTIONS TO EVIDENCE IN SUPPORT OF DEFENDANTS' OPPOSITION TO MOTION FOR
SUMMARY JUDGMENT- C 05 01912 BZ

Selman Breitman LLP
ATTORNEYS AT LAW

1   access" on the 1999 application and not that he did not know in 2004 at the time he was

2   conducting his coverage analysis.  Defense counsel's parenthetical argument is not evidence.

3   Unionamerica has concurrently filed a motion to strike the parenthetical in its entirety.  The

4   evidence cited does not support the contention that Mr. Shureen recommended the rescission

5   action.  Who recommended the rescission action is not relevant to if there is a reasonable basis to

6   support rescission.

7   **26.    Paragraph 274**

8   <u>Objectionable language:</u>        "Despite meeting with Ms. Prah, Mr. Shureen did not know

9   whether the Fort Miller applications disclosed "access platforms." ***(Yet he still recommended this***

10  ***rescission action.)"***

11  <u>Objections:</u>    Assumes facts not in evidence, misstates testimony, not relevant,

12  inappropriate argument by counsel.

13  <u>Argument:</u>      The testimony cited states that at his November 20, 2008 deposition Mr.

14  Shureen did not recall which application stated what and not that he did not know in 2004 at the

15  time he was conducting his coverage analysis.  The applications speak for themselves.  Defense

16  counsel chose not to show the applications to Mr. Shureen.   Defense counsel's parenthetical

17  argument is not evidence.  Unionamerica has concurrently filed a motion to strike the parenthetical

18  in its entirety.  The evidence cited does not support the contention that Mr. Shureen recommended

19  the rescission action.  Who recommended the rescission action is not relevant to if there is a

20  reasonable basis to support rescission.

21  **27.    Paragraph 275**

22  <u>Objectionable language:</u>        "Despite meeting with Ms. Prah, Mr. Shureen did not know

23  whether "engineered access: appeared on the 1999 application. ***(Yet he still recommended this***

24  ***rescission action.)"***

25  <u>Objections:</u>    Assumes facts not in evidence, misstates testimony, not relevant,

26  inappropriate argument by counsel.

27  <u>Argument:</u>      The testimony cited states that at his November 20, 2008, deposition Mr.

28  Shureen did not recall what the 1999 application stated  and not that he did not know in 2004 at

22

Selman Breitman LLP
ATTORNEYS AT LAW

415296.1 1090.23834

the time he was conducting his coverage analysis.  The applications speak for themselves.

Defense counsel chose not to show the 1999 application to Mr. Shureen.   Defense counsel's

parenthetical argument is not evidence.   Unionamerica has concurrently filed a motion to strike

the parenthetical in its entirety. The evidence cited is does not support the contention that Mr.

Shureen recommended the rescission action. Who recommended the rescission action is not

relevant to if there is a reasonable basis to support rescission.

**28.    Paragraph  276**

    <u>Objectionable language:</u>       "Despite meeting with Ms. Prah, Mr. Shureen had no

understanding of what "engineered access" meant, and did not undertake any investigation to find

out. *(Yet he still recommended this rescission action.)"*

    <u>Objections:</u>     Assumes facts not in evidence, misstates testimony, not relevant,

inappropriate argument by counsel.

    <u>Argument:</u>      The testimony cited states that at his November 20, 2008 deposition Mr.

Shureen did not recall what Ft. Miller meant by the term "engineered access" and not that he did

not know in 2004 at the time he was conducting his coverage analysis.  Mr. Shureen testified that

he did conduct research into the Beeche access platform system products by going onto the

Beeche website and also requesting materials from the Ft. Miller Group. Index, Ex. 65 at 54-55.

Mr. Shureen's understanding of engineered access in 2004 is not relevant to the underwriting of

the policies in 1999-2001. Defense counsel's parenthetical argument is not evidence.

Unionamerica has concurrently filed a motion to strike the parenthetical in its entirety. The

evidence cited is does not support the contention that Mr. Shureen recommended the rescission

action.  Who recommended the rescission action is not relevant to if there is a reasonable basis to

support rescission.

**29.    Paragraph 277**

    <u>Objectionable language:</u>       "Mr. Shureen, as the outside claims adjuster for

Unionamerica, …"

    <u>Objections:</u>     Assumes facts not in evidence misstates testimony.

    <u>Argument:</u>       The cited evidence does not support the statement that Mr. Shureen was

23

Selman Breitman LLP
ATTORNEYS AT LAW

415296.1  1090.23834

1  "the outside claims adjuster for Unionamerica"  " In fact Mr. Shureen testified that he was engaged

2  to provide coverage analysis for  the GAP policies.

3  **C.      CONCLUSION**

4       For the reasons stated, Unionamerica respectfully requests that this Court sustain

5  Unionamerica's objections and disregard defendants' evidence listed above.

6

7

8  DATED: December 3 , 2008              SELMAN BREITMAN LLP

9

10                                       By:_____/s/Michelle Press_____

11                                          MICHELLE R. PRESS
                                            LAURA R. RAMOS
12                                          RYAN J. VAN STEENIS
                                         Attorneys for Plaintiff Unionamerica Insurance
13                                       Company Limited, successor-in-interest to St. Paul
                                         Reinsurance Company Limited

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**Selman Breitman LLP**
ATTORNEYS AT LAW

24

OBJECTIONS TO EVIDENCE IN SUPPORT OF DEFENDANTS' OPPOSITION TO MOTION FOR
SUMMARY JUDGMENT- C 05 01912 BZ